Edward J. Dembinski, Plaintiff-Appellant, v. F. & T. Corporation, a Corporation, Henry Nowak, Trustee Under Trust Agreement No. 1180, Henry Nowak, Individually, Henry F. Nowak, and John Truty, Defendants-Appellees.

Gen. No. 53,232.

First District, First Division.

April 27, 1970.

Lloyd P. Douglas, of Chicago (Lloyd P. Douglas and Gerald M. Chapman, of counsel), for appellant.

McKinley, Price & Fako, of Chicago (Edwin A. Strugala, of counsel), for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is a dramshop action for personal injuries inflicted by an alleged intoxicated person, whose intoxication, plaintiff contends, was caused in whole or in part by alcoholic liquor sold by defendants. Plaintiff appeals from a jury verdict and judgment in favor of defendants.

On appeal plaintiff contends prejudicial trial errors were committed in that (1) the trial court erroneously

admitted prior statements of the intoxicated person as impeachment testimony and so instructed the jury; (2) the defendants tendered a police report in the presence of the jury, which was rejected by the trial court; and (3) improper comment by defense counsel was made in his closing argument.

The assailant, Stefan Nicpon, testified for plaintiff. The record indicates that he had a limited use and knowledge of the English language and at times had some difficulty in understanding questions. During his cross-examination it was suggested that he might understand better "if we had a Polish interpreter." The court directed that the questions be given slowly and that he be given an opportunity to answer.

Nicpon's testimony showed that on July 8, 1966, he drank about four or five glasses, or more, of half wine and half water in his home. About 9:00 p. m., he went to defendants' restaurant, known as Nowak's, where he had a sandwich and purchased and drank at least two beers and two or three shots of cognac. He remained in the restaurant for about a half hour. When Nicpon left the restaurant he felt tired and wanted to go home. He stated, "It was a very hot day, and I am drunk." He walked for five minutes because "I feel, you know, tired and I didn't feel so good because I was drunk. I was looking for some place to sleep." He arrived at a small triangular park where plaintiff Dembinski, Vincent Swiderski, and one Noga, since deceased, were sitting on a park bench. They were all acquaintances of Nicpon. He approached them and attempted to strike up a conversation with plaintiff. Plaintiff told him, "If you want to talk to me I talk to you later." After a brief exchange of words, plaintiff shoved Nicpon and started to strike and kick him. Nicpon said, "then he lift his legs and push me in my belt and starts to kick me . . . from the sidewalk . . . . I start, you know, defense myself.

114

I pull out the knife and stab him with the knife." After the stabbing, Nicpon ran to a fire station approximately one block away and told the fireman to close the door because three men were chasing him. The witnesses who observed Nicpon running testified that he ran straight and did not fall down.

On cross-examination Nicpon testified that he had been plaintiff's neighbor and had known him for some time. He stated that if he had not been drunk, he never would have stabbed plaintiff. Also, when he was questioned about a statement taken from him by defendants' representatives at his home on October 30, 1967, the following took place:

Q. "Did you tell them that you did not feel drunk at the time of this incident?"

A. "I don't remember. I could not tell him that because I was."

 . . . . . .

A. "Then I was looking, you know, because I didn't feel that drunk that I am tipping."

Q. "You didn't feel drunk at all then?"

A. "It seems to me, but I was so tired, you know."

Q. "Were those questions asked of you and were those your answers?"

A. "Maybe they didn't understand me good."

Q. "It could be that you said that though?"

Mr. Douglas: "Object."

The Court: "Question and answer may stand. The answer is, 'No.'"

Plaintiff testified that when Nicpon approached him on the bench he "realized there is a problem. I noticed that he was somewhat excited. He looked like an idiot or as drunk." He told Nicpon to leave him alone for awhile because he was busy talking to Swiderski. Nicpon wouldn't leave, so he pushed Nicpon with his foot, and

115

Nicpon jumped back and quickly stabbed him. Nicpon then ran away very fast and in a straight line. Plaintiff did not smell anything on Nicpon's breath at any time.

Vincent Swiderski, a witness to the stabbing, testified that Nicpon was "just like wild, excited. I didn't know what was happening with him. He was red in his face." Nicpon ran away very fast and in a straight line. Nicpon was also "kind of nervous" at the beginning.

Defendants' witnesses included the two police officers who had arrested Nicpon and a fire lieutenant who was present when Nicpon entered the fire station. Officer Partipilo had a conversation with Nicpon and could understand him. Nicpon was not nervous or excited. The officer was of the opinion that Nicpon was sober and further stated that he smelled no alcohol on Nicpon's breath. At the police station he made out an arrest slip marking Nicpon's condition as sober. He also made out a case report but put nothing in it as to intoxication. The arrest slip was offered into evidence but ruled inadmissible by the trial judge.

Officer Kilroy testified that he also spoke to Nicpon in the squad car and could understand him. Nicpon was "panting or breathing hard," but he could smell no alcohol. Nicpon did appear "restless" but in the opinion of the witness he was sober.

James Lynn, the fireman who was present when Nicpon ran into the fire station, testified that he asked Nicpon why he had stabbed plaintiff, and Nicpon answered "because he kicked me." He did not smell any alcohol on Nicpon's breath and was able to understand him. He was of the opinion that Nicpon was sober.

Albert Levin, a court reporter who was present at the interrogation of Nicpon on October 30, 1967, was called by defendant for impeachment purposes and read from his notes, which included a statement by Nicpon that he "didn't feel drunk" at the time of the occurrence; also,

"I must have been drunk because the whole time—I drank all the time—you know—then you don't feel so—sure, I was drinking." Levin further testified that Nicpon's speech was very poor, so that it was difficult to get the precise words that he used throughout the interview.

On the basis of the court reporter's testimony, the trial court overruled plaintiff's objection that there had been no impeachment of Nicpon as to drinking and gave defendants' instruction No. 10, as follows:

> "The credibility of a witness may be attacked by introducing evidence that on some former occasion he made a statement inconsistent with his testimony in this case on a matter material to the issues. Evidence of this kind may be considered by you in connection with all the other facts and circumstances in evidence in deciding the weight to be given to the testimony of that witness."

Plaintiff initially contends that defendants attempted to give the impression that Nicpon's testimony was wholly manufactured for the purpose of helping his friend Dembinski, and "counsel proceeded with a classical attempt to impeach Nicpon by a prior inconsistent statement. Actually, the alleged impeaching question was clearly ambiguous on its face, and, when taken in context, was not impeaching." Plaintiff asserts that it was prejudicially erroneous to admit the testimony of Levin. Plaintiff's authorities on this point include Reilly Tar & Chemical Corp. v. Lewis, 326 Ill App 84, 61 NE2d 290 (1942), and People v. Rainford, 58 Ill App2d 312, 208 NE2d 314 (1965). In Reilly Tar & Chemical Corp. v. Lewis, it is said that for statements to be admissible as impeachment they must meet the following requirements: "(a) statements read as impeachment must be contradictory to and inconsistent with the testimony

117

given in the trial; (b) such contradiction or inconsistency must be as to material matters; (c) the earlier statements must be read or shown to the witness, and (d) the witness must deny making the earlier statements."

In People v. Rainford, it is said (p 320):

> "Generally, a prior statement of a witness, in order to be capable of being proved for purposes of impeachment, must be materially inconsistent with his testimony. The test to be applied in determining inconsistency has been variously stated but basically is that the inconsistent statement must have a reasonable tendency to discredit the direct testimony on a material matter."

Plaintiff further argues that Levin, the court reporter, admitted difficulty in understanding Nicpon, and that the alleged inconsistent statement was the result of a difficulty in expression and understanding. Plaintiff maintains that where an alleged inconsistent statement shows a difficulty in semantics and does not show a prior inconsistent belief, the better rule is to exclude the alleged impeaching statement.

Plaintiff maintains that he was prejudiced when the trial judge gave defendants' instruction No. 10 dealing with impeachment by prior inconsistent statements. Plaintiff asserts that because there was no other attempt at impeachment, the instruction was predicated on the inadmissible statement made by Nicpon, and that instructions may not be predicated upon inadmissible testimony.

Defendants contend that the jury could not have been misled by the instruction even if the prior statements had, in fact, not been impeaching. They note that it was for the jury to determine if any of the prior statements in fact impeached Nicpon. Authorities include Michna v. May, 80 Ill App2d 281, 225 NE2d 391 (1967), where it is said (p 292):

"Whether testimony is credible or contradictory or whether it is impeached are generally matters for the trier of fact and its findings will not be disturbed unless they are manifestly against the weight of the evidence."

Also, People v. Tate, 30 Ill2d 400, 197 NE2d 26 (1964), at page 403:

"Impeachment of a witness by a prior contradictory statement is of course an accepted technique. As this court said in People v. Moses, 11 Ill2d 84, 87: 'Evidence of prior inconsistent statements by a witness is admissible to impeach his credibility. (People v. Smith, 391 Ill 172, 176.) Such evidence is not admitted as proof of the truth of the facts stated out of court, but to cast doubt on the testimony of the witness by showing his inconsistency, and an instruction to that effect should be given upon request. . . .' "

■■ We find no prejudicial error in the trial court's ruling on the alleged impeachment testimony and the giving of instruction No. 10. We agree with plaintiff that the alleged inconsistent statement of Nicpon shows a difficulty in semantics. However, we do not believe that the statement was prejudicial to plaintiff. Nicpon stated several times that he was drunk and, in substance, the statement corroborates Nicpon's court testimony. Also, the pretrial statement of Nicpon showed a sufficient inconsistency to warrant the giving of instruction No. 10, and if its giving was error, plaintiff was not prejudiced.

Considered next is plaintiff's contention that reversible error was committed by defendants tendering a police report in the presence of the jury. Plaintiff asserts, "After interrogating Officer Partipilo as to his opinion concerning Nicpon's sobriety at the time of the occur-

119

rence, counsel for the defendant produced the officer's police reports, examined him as to their contents, and offered them in evidence, all in the presence of the jury."

Plaintiff argues that plaintiff was forced to object in front of the jury, and it placed plaintiff in a prejudicial position before the jury and, although the trial judge did not admit the exhibit, he failed to take remedial action against the prejudice caused by requiring plaintiff's counsel to object. Plaintiff's authorities include Johnson v. Plodzien, 31 Ill App2d 222, 175 NE2d 560 (1961), where it is said (p 227):

> "The courts in this state have generally held that a police report is not admissible in corroboration of a party's trial testimony, and that the mere attempt to introduce such an exhibit may be considered reversible error."

Defendants contend that no prejudicial error was committed in tendering the police report. They note that "all that the arrest slip could have shown was what already was in evidence as to the nature of the offense charged, the time and place, the victim's name, his assailant's name, addresses, and other vital statistics as to age, race, etc." Defendants further argue that the police reports were in fact admissible to show "that the officer was under a duty at the time to determine Nicpon's condition for sobriety or intoxication, and that he performed his duty and made that determination contemporaneously with the arrest. These circumstances were relevant to the weight to be given his opportunity to observe."

We are not persuaded that defendants' reason for tendering the police report was proper in this case. This practice has been repeatedly condemned and has been held many times to be reversible error. In the instant case we think it was improper to make the offer

into evidence in front of the jury. This should have been explored with the court out of the presence of the jury. However, the record shows that the officer had been interrogated by defendant, without objection, as to the contents of a case report and an arrest slip, and that he had marked the arrest slip to show that Nicpon was sober at the time he had arrested him. In addition to the officer, several other witnesses testified that Nicpon was sober, and although we do not approve of the offering of the arrest slip or report, we do not think its impropriety was of such substance here as to be prejudicial to the rights of the plaintiff. Black v. DeWitt, 55 Ill App2d 220, 227, 204 NE2d 820 (1965).

Plaintiff finally contends that defendants' counsel made improper and prejudicial comments in his closing argument. Defendants' counsel stated, "It seems to me, the defendant that should be here is Nicpon." Plaintiff argues, "Nicpon's potential liability to the plaintiff was not in issue in this case so that this argument had no place in the closing arguments. . . . this argument violated the limits imposed on closing argument in two respects: (a) it exceeded the issues in the case, and (b) it was a misstatement of the law in that there was no necessary connection between the claim against these defendants and the claim against Nicpon." Also, defendants' counsel inferred that Nicpon had been in trouble before.

Authorities cited include Mattice v. Klawans, 312 Ill 299, 143 NE 866 (1924), where it is said (p 310):

"While it is true that an attorney may in the course of a trial inadvertently make improper remarks, the prejudicial effect of such a statement is usually removed where the court promptly sustains an objection thereto and the attorney makes retraction in good faith; but where the record shows, as it does in this case, that an attorney has deliberately and

repeatedly indulged in prejudicial argument to the jury, the effect of such misconduct can not be measured, and the only remedy is to grant a new trial."

Defendants contend that plaintiff opened the door to comment on Nicpon's character when he asked Nicpon on direct examination, "And had you ever done anything like that before?"

In considering this question, we think the remarks made in Hopwood v. Thomas Hoist Co., 71 Ill App2d 434, 219 NE2d 76 (1966), are in point. There the court said (pp 443–4):

> "The purpose of a closing argument is to assist the jury in arriving at a verdict, with all facts presented fairly. Considerable latitude of expression on anything that is in evidence must be allowed counsel. It is within the function of an advocate to argue that the client is not liable, which was the real purport of the allegedly improper argument in the instant case. . . . When arguing within the limits of admitted or uncontroverted facts, counsel should enjoy the greatest latitude consistent with decorum."

We conclude that the comments in question were not improper in this case. See Schneider v. Kirk, 83 Ill App2d 170, 226 NE2d 655 (1967).

After examining this record in detail, we conclude that no prejudicial error was committed, and for the reasons stated the judgment is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.