Devota V. James, Also Known as Peggy Ouellette, Appellant, v. Louis Wicker et al., Appellees.

Gen. No. 41,497.

Opinion filed March 31, 1941.

JEROME B. READ and RICHARD G. FINN, both of Chicago, for appellant; JEROME B. READ and RICHARD G. FINN, of counsel.

LORD, BISSELL & KADYK, of Chicago, for appellees; GORDON R. CLOSE and HERBERT C. BROOK, both of Chicago, of counsel.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against the tavern keeper and the owner of the property in which the tavern was being conducted to recover damages for personal injuries claiming that defendants were liable under the provisions of § 14 of the Dram Shop Act. [Ill. Rev. Stat. 1939, ch. 43, par. 135, § 14; Jones Ill. Stats. Ann. 68.042.] There was a jury trial and a verdict and judgment in plaintiff's favor for $15,000. Afterward defendants' motion to vacate the judgment and for judgment notwithstanding the verdict was allowed and plaintiff appeals.

The record discloses that at about 10 o'clock at night of August 21, 1937, plaintiff, Peggy Ouellette and her friend, Phyllis Steponaitis, who were both employed as masseuses at the Viking Health Institute, located in the Loop on North State street, in Chicago, went in an automobile with their friends, Emmet Laughlin and Mr. Dwyer (whom they had met on prior occasions), to defendant Wicker's tavern located at 2204 S. Pulaski road—at the intersection of Ogden avenue, S. Pulaski road and Cermak road, in Chicago—where they remained until about 2:30 o'clock in the morning drinking and dancing. It was raining at the time and plaintiff and Laughlin went to the automobile which was parked nearby, drove in front of the tavern, picked up the other couple and then started up Ogden avenue in a northeasterly direction toward plaintiff's home. When they had proceeded about 300 yards, the automobile ran head-on into an iron post which was located in the street intersection and plaintiff was severely injured—in fact each of the four was injured and taken to nearby hospitals. The post was quite high and was used to support wires in connection with the operation of street cars on Ogden avenue and Cermak road.

The two women gave testimony to the effect that while they and their escorts were at the tavern each drank considerable intoxicating liquor; that Laughlin, the driver of the automobile, became so intoxicated

that he was unable to dance properly and stuttered although he did not do so when sober. Neither of the two men testified and a police officer, called by defendants, testified he had read in a newspaper that Laughlin, who was also a police officer, died about six months before the trial. Why the other man, Dwyer, was not called does not appear and no mention is made of this fact in the record or the briefs.

Plaintiff testified that at the time of the trial, February, 1940, she was 24 years old and had been a masseuse about three and one-half years; that she had been employed at the Viking Institute about seven or eight months before the accident and was in charge of the place at the time; that shortly before the night in question she had been in an hospital where she was operated on for appendicitis and had been back at her work about one and a half weeks; that she and her friend, Phyllis Steponaitis had known the two men for a short time and had been out with them before the evening in question; that while they were at the tavern they danced and had several drinks of intoxicating liquor and at times the men went to another table in the tavern "and I know they had a shot glass in front of them"; that during the evening she had "five or six [drinks—'Scotch and soda,' 'Tom Collins' and 'sloe gin'] maybe more or less, I don't know"; that shortly before they left the tavern "With the drinks I had and not feeling well it made me quite groggy and sleepy. . . . I tried to dance with Mr. Laughlin and could not. He seemed to be on my feet more than on his own and he also stuttered . . . and either Phyllis or myself would have to finish his sentences"; that at the time they left the tavern "I was feeling a little bit lit and sleepy."

Phyllis Steponaitis, called by plaintiff, testified she was a masseuse and had been working at the Viking Health Institute six or seven months before the accident. As to what took place at the tavern she testified

she knew the master of ceremonies there; that when she and the others got to the tavern they had drinks at the table; ''I drank Scotch and soda and the boys had ale''; that from time to time they got up to dance; that during the course of the evening ''I don't know how many drinks I had, but I would say about ten''; that sometimes the two men went to other tables. ''All I know is that they had shot glasses and I do not know if it was ginger ale or gin or what it was''; that the men had two or three drinks at other tables; that as the evening went on ''the men were intoxicated. . . . Laughlin was boisterous. . . . He stuttered terribly. He stutters when he gets drunk. . . . I felt pretty happy myself, and Peggy did too''; that when they left the tavern Laughlin was intoxicated. On cross-examination she testified she would not say that Peggy and herself were intoxicated but the drinks they had ''just makes you forget all your troubles. In other words, we had a pleasant glow at that point.''

Plaintiff in her complaint alleged she was at all times in the exercise of due care and caution for her own safety. This was denied by defendants in their answers. At plaintiff's request the court instructed the jury that the expression ''proximate cause'' means ''the negligent act or omission'' which produced the injury but need not be the sole cause nor the last nor the nearest cause; that to make the negligent act the proximate cause of the injury it was not necessary that the particular injury could reasonably have been foreseen; that it was sufficient that ''the wrongdoer might, by the exercise of ordinary care, have foreseen that some injury might result as a natural and probable consequence of his negligence, if any such negligence is shown by a preponderance of the evidence.'' Another instruction given at plaintiff's request told the jury if they found from a preponderance of the evidence that plaintiff was injured as a result of the intoxication of Laughlin, (if they believed he became

intoxicated by reason of liquor sold to him by defendant, Wicker, and the intoxication was the proximate cause of plaintiff's injuries) the fact that plaintiff may also have been intoxicated at the time would not be a defense unless the jury believed that her intoxication proximately contributed to bring about the accident in question.

At defendants' request the jury were told that if they found from a preponderance of the evidence the intoxication, if any, of Laughlin, was not the proximate cause of the accident but that the sole cause was the unfavorable weather condition and visibility or that the street car company was negligent in maintaining the post in the street, their verdict should be for defendants. And in two other instructions given at defendants' request, the jury were told that if plaintiff failed to exercise due care and caution for her own safety when she entered the automobile knowing Laughlin was intoxicated, they should find defendants not guilty and that if the jury found from a preponderance of the evidence that plaintiff was intoxicated and that her intoxication proximately contributed to her injury, she could not recover. Another instruction was to the effect that plaintiff could not recover unless she was in the exercise of due care and caution for her own safety. Therefore, it is clear that the case was submitted to the jury on the theory that plaintiff could not recover unless she were in the exercise of due care and caution for her own safety.

In this court counsel for plaintiff say: ''The facts in the case at bar raise squarely for the first time in an injury case in Illinois the question of contributory negligence as a defense'' to an action to recover civil damages under Section 14 of the Dram Shop Act and contend that contributory negligence is not a defense to such an action.

From the complaint and the instructions it is clear that the case was tried on the theory that contributory

negligence was a defense, yet we think the legal question was squarely raised on defendants' motion for judgment notwithstanding the verdict. In some situations, when technically considered, contributory negligence is no defense to an action brought to recover civil damages under the Dram Shop Act because the question of negligence of the dram shop keeper or the owner of the premises is in no way involved. But it does not follow that plaintiff can recover in such an action where her own conduct contributed to bring about her injuries for which she sues.

It was not a tort at common law to sell or give away intoxicating liquor to one who was strong and able-bodied. The action to recover civil damages is purely statutory. *Cruse v. Aden,* 127 Ill. 231; *Meidel v. Anthis,* 71 Ill. 241; *Hyba v. C. A. Horneman, Inc.,* 302 Ill. App. 143. But we think it is also the law that one cannot recover under § 14 of the Dram Shop Act for injuries sustained unless he is innocent. *Morton v. Roth,* 189 Mich. 198; *Reget v. Bell,* 77 Ill. 593; *People v. Linck,* 71 Ill. App. 358; *Buntin v. Hutton,* 206 Ill. App. 194.

Section 14 provides: "Every husband, wife, child, parent, guardian, employer or other person, who shall be injured, in person . . . by any intoxicated person or in consequence of the intoxication, . . . of any person, shall have a right of action . . . against any person or persons who shall, by selling or giving alcoholic liquor, have caused the intoxication, in whole or in part, of such person; and any person owning, renting, leasing . . . any building . . . and having knowledge that alcoholic liquors are to be sold therein, that have caused, in whole or in part, the intoxication of any person, shall be liable, . . . with the person . . . selling or giving alcoholic liquors . . . for all damages sustained."

In the *Morton* case [189 Mich. 198], where an action was brought for civil damages under a statute sub-

stantially the same as § 14, it was held the statute created a remedy against the saloon keeper for the benefit of innocent third persons. In that case Morton sued the saloon keeper Roth to recover for personal injuries received by him when he was riding in an automobile driven by a minor to whom Roth had sold intoxicating liquor and it was held no recovery could be had. There the evidence tended to show that plaintiff, who was 22 years old, met McMahon a young man acquaintance 18 years old. They visited several saloons in Muskegon, Michigan, and had a number of drinks. Afterward "they took an automobile which they found upon the street, and, with McMahon driving, enjoyed a ride." They were both intoxicated. McMahon mismanaged the automobile and it was wrecked, severely injuring plaintiff. There was a directed verdict for defendant which the Supreme Court sustained. The court there said: "A few, and only a few, cases under the statute have reached this court in which the plaintiff was other than an innocent third person injured by an intoxicated person, or by reason of the intoxication of some person, or by reason of the unlawful selling of intoxicating liquor to some person. In *Brooks v. Cook,* 44 Mich. 617 [7 N. W. 216, 38 Am. Rep. 282], the plaintiff had his pocket picked while he was intoxicated. He was refused relief." The court then refers to the case of *Heikkala v. Isaacson,* 178 Mich. 176, where plaintiff, while driving with another and while somewhat intoxicated, was struck and injured by an intoxicated person, and it was held plaintiff could recover although he had aggravated the person who assaulted him. And continuing the court said: "But in *Rosecrants v. Shoemaker,* 60 Mich. 4 [26 N. W. 794], where a wife brought her action under the statute for furnishing liquor to her husband, there was testimony tending to prove that she authorized defendants to furnish liquor to her husband, and that she herself procured it for him." In that case the

court sustained a directed verdict for defendant, and quoted the following from the *Rosecrants* case: "As the wife sues solely in her own behalf, it is evident that she cannot complain of any evil which she has herself caused, and that, if she encouraged or requested the sale of liquor to her husband, she does not stand on the footing of an innocent injured party. . . . And continuing said: "The courts of other States have recognized the same principle. *Reget v. Bell,* 77 Ill. 593. . . .

"In the case at bar, there was no act of McMahon— no affirmative act, like a blow or other trespass—which caused plaintiff's injury. And plaintiff himself participated in furnishing liquor to McMahon, a minor. . . . He was guilty of furnishing liquor to a minor and to an intoxicated minor. . . . But plaintiff is seeking to recoup himself, in a pecuniary way, for consequences for which he was directly and actively responsible. In my opinion, he is not an 'other person' within the meaning of the statute sued upon, and the ruling and direction complained about were right."

In the *Reget* case [77 Ill. 593], suit was brought by a widow to recover for the death of her husband which she claimed resulted through defendant's selling the husband intoxicating liquor. The judgment in favor of plaintiff was reversed. Recovery was sought under the Dram Shop Act. In that case defendant kept a wholesale liquor store and sold a jug of whiskey to the husband who took it home. He went to bed placing the jug which was nearly full by his bedside. The next morning it was nearly empty. "He never left the bed alive." There was no proof that he was a habitual drunkard but was a hard-working, industrious man and kind to his family, but occasionally he would indulge "in a 'spree' of the hardest kind." The court said: "It seems very plain, from the testimony, the plaintiff, now his widow, could have deprived him of the use of this whiskey, had she been so inclined, by breaking the jug, . . .

"We are bound to consider she was a willing party to the conduct of her husband, and instrumental in bringing the loss upon herself." The judgment in plaintiff's favor was reversed.

In the *Linck* case [71 Ill. App. 358], it was held that one who was active and willing agent in procuring his own intoxication could not recover on the saloon keeper's bond for injuries which resulted from his intoxication. The court speaking by Mr. Presiding Justice HARKER said: "We do not think the statute was intended to cover any such case, but rather those cases where parties have been innocently injured by the wrongful act of the principal in the bond.

"The party complaining and seeking damages must be free from complicity in procuring the intoxication."

In the *Buntin* case [206 Ill. App. 194], suit was brought against defendant for procuring alcoholic liquors for plaintiff which she drank as a result of which she became intoxicated and disabled in body and mind, and it was charged that defendant well knew she was in the habit of getting drunk. A general demurrer was sustained to the declaration, the suit was dismissed and an appeal followed. The court discussed a number of Illinois cases and the statute and said: "neither the common law nor the dramshop statute gives to a person a right of action against the seller or against any one procuring liquors for the person suing, where the person suing voluntarily and with full knowledge purchases the same or procures the person sued to procure them. To hold that one could recover . . . would savor too much of allowing a person to benefit by his or her own wrongful act."

In the instant case we think the evidence shows plaintiff, Laughlin, and the other two persons were more or less under the influence of liquor when they left the tavern and while obviously plaintiff did not purchase any of the liquor, we think she was a "willing party" not free from "complicity" but on the con-

trary was a participant in what was done in that regard at the tavern and not an innocent person, who alone, is entitled to recover under the statute.

It appearing to the court from a written motion made by plaintiff that defendant, Newton Grey, individually and as one of the trustees of the estate of Charles F. Grey, deceased, died January 21, 1941, it is ordered that the judgment of the circuit court of Cook county appealed from be and the same is hereby affirmed *nunc pro tunc* as of January 20, 1941.

*Judgment affirmed.*

MATCHETT and McSURELY, JJ., concur.