DIANE KREPFL, Individually and as Administrator of the Estate of Carl W. Krepfl, Deceased, Plaintiff-Appellee, *v.* LEN W. BURKE *et al.*, Defendants.—(ADRIAN D. NORTHCUTT *et al.*, Defendants-Appellants.)

(No. 59717;

First District (2nd Division)—November 19, 1974.

John Fako, Jr., of McKinley, Price & Fako, of Chicago (Edwin A. Strugala, of counsel), for appellant Northcutt.

John C. Healy, of Stanton & Healy, of Chicago (Edwin A. Strugala, of counsel), for appellant Neagles.

Lane, Falasz, Pollman & Munday, of Chicago (Thomas L. Trinley, of counsel), for appellee.

Mr. JUSTICE DOWNING delivered the opinion of the court:

This action was brought against multiple defendants in the court below. The first count, under the Dram Shop Act (Ill. Rev. Stat. 1967, ch. 43, par. 94 *et seq.*), sought to recover for plaintiff, Diane Krepfl (hereinafter plaintiff), loss of means of support of her husband, Carl Krepfl, who died on June 16, 1968, as a result of injuries sustained in an automobile accident. The second count sought to recover damages for the wrongful death of plaintiff's deceased husband.

At the close of plaintiff's evidence in the trial court, count two of the complaint against the operator and owner of the automobile which struck Carl Krepfl was voluntarily nonsuited by the plaintiff. Further, at the close of plaintiff's evidence, a directed verdict was entered in favor of Len W. Burke, a defendant under count one of the complaint.

Regarding the remaining defendants under count one, William R. Neagle and Lucille E. Neagle, owners and operators of the Wil-Lu Inn, and Adrian D. Northcutt, owner and operator of the Turf & Twig, the jury returned a verdict against them, and in favor of plaintiff, in the sum of $65,000. The judgment thereon was entered by the trial judge, as reduced by the statute, in the amount of $20,000.

Defendants appeal from the verdict and judgment, complaining that the trial court erred in denying their motion for a directed verdict made

at the close of plaintiff's case and again at the close of all the evidence, and in denying their post-trial motion for judgment *non obstante veredicto* or, in the alternative, for a new trial.

Plaintiff's decedent, Carl Krepfl, died on June 16, 1968, at age 33, approximately 6 months after the two had been married. Both plaintiff and Carl had, earlier in their lives, been patients in Elgin State Hospital. As of June 15, 1968, plaintiff and Carl were living at the Clearview Motel in Wheeling, Illinois, immediately next door to the Wil-Lu Inn, a tavern. At the time, Carl worked as a part-time handyman at a building supply company, earning $2.00 per hour, and had held the position since March of 1968; prior to that, he had been out of work most of his life. Plaintiff held a job at a local restaurant, and she and Carl shared living expenses, Carl paying for the rent of approximately $42 per week and plaintiff paying for the food for the couple.

Regarding the events and circumstances surrounding the accident which led to Carl Krepfl's death, the Wheeling Police Department, by bulletin, had requested taverns in the area near where plaintiff and her husband lived not to serve liquor to Carl Krepfl, apparently because he became troublesome when intoxicated. On the evening of June 15, 1968 (a Saturday), Carl returned from work to the Krepfl's motel room at about 4:30 P.M., and, according to plaintiff's testimony, he appeared to her to already have been drinking. He immediately left the room to go next door to the Wil-Lu Inn, owned and operated by defendants Neagle, and when he returned to the room at about 5 P.M., he appeared to plaintiff to be somewhat intoxicated.

The couple changed clothes and went next door to the Wil-Lu Inn to eat supper. Upon their arrival, Carl ordered himself a drink, and, when he asked plaintiff what she wanted to drink, plaintiff indicated that she would rather have a coke. According to plaintiff, Carl said, "Well, drink something better than a Coke." Plaintiff was served a glass of Mogen David wine from which she had one or two sips.

The couple stayed at the Wil-Lu Inn until approximately 9 P.M., during which time Carl had about three beers and two shots of whiskey; plaintiff had but the few sips of Mogen David wine. While at the Wil-Lu Inn, the couple was served drinks by "Little Willy." At one point during their stay at the Wil-Lu, plaintiff testified, she asked Little Willy not to serve Carl any longer, to which Little Willy responded, "What's the difference?" After plaintiff had said that to Little Willy, he said that he was going to give Carl some more to drink, which he later did. At another point during the time at the Wil-Lu, plaintiff testified, she asked Carl not to drink any more, to which he replied, "Who's boss?" Plaintiff responded, "You are, yes." Plaintiff testified that Carl would not listen to

her and that he became angry, and further, that because Carl wanted his own way, plaintiff stated that she felt that she should "＊ ＊ ＊ let him have his own way. I didn't want to fight with him."

At about 9 P.M. when the couple left the Wil-Lu, Carl told plaintiff that they were going to the Hilltop Inn, a tavern owned by Len W. Burke, located next door to the Wil-Lu. They had nothing to drink at the Hilltop. Plaintiff testified that Burke grabbed her and Carl and took them out the front door of the Hilltop immediately upon their entry; Burke testified that the couple simply came in and left within a few minutes.

After having left the Hilltop, plaintiff and Carl returned to the Wil-Lu, where they stayed for about 30 minutes. Carl met a friend at the Wil-Lu and had another shot and beer. At approximately 10 P.M., plaintiff, Carl, and the friend, whom plaintiff could not identify, left the Wil-Lu; they obtained a cab and the friend was given a ride to his home some miles away.

The couple next went to the Turf & Twig on Milwaukee Avenue in Wheeling, an establishment owned and operated by defendant Northcutt. At the bar, Carl ordered himself a martini on the rocks, and he ordered another Mogen David for plaintiff; she had one or two sips of it. Carl was getting a little intoxicated, and he left his seat and wanted to dance. Plaintiff told him to sit down because he was "all over the place"; he continued to dance by himself. When the band stopped playing, Carl gave plaintiff a quarter with which to play the jukebox, which she did.

Eventually, the bartender at the Turf & Twig refused to serve Carl, and he went next door to the Bavarian Lodge to borrow some money from Hans Ammelounx, the proprietor, leaving plaintiff for approximately 20 minutes at the Turf & Twig. Carl was not served at the Bavarian Lodge. Upon his return, he said, "Let's go home," and the couple left the Turf & Twig at approximately 11 P.M. As they walked north along Milwaukee Avenue, Carl was behind plaintiff. After a time, Carl decided to go back to the Bavarian Lodge to get some cigarettes; plaintiff continued walking along Milwaukee Avenue, by herself, on her way back to the motel room. She walked for about 5 minutes before crossing Milwaukee to get back to the motel. She did not see Carl Krepfl until the next morning in the hospital.

Carl spent only a few moments at the Bavarian Lodge, and after he had spoken with Hans Ammelounx, he walked out of the Lodge and began to cross Milwaukee Avenue, a four-lane highway having a 50-mile-per-hour speed limit at that point. There were no stop signs, traffic signals, or street lights in the immediate vicinity. It was very dark. The motor vehicle which struck Carl Krepfl was northbound in the outer northbound lane of traffic, and the auto's driver testified that just before

impact he saw a figure, staggering and coming from his left, turn in front of his auto. Carl Krepfl died the next morning at 5:45 A.M.

The issues presented for review are:

(1) whether plaintiff was guilty of complicity with Carl Krepfl as a matter of law and whether the trial court erred in refusing to direct a verdict in defendants' favor and in refusing to enter a judgment *non obstante veredicto*;

(2) whether the trial court committed reversible error in recalling the jury after the case had been committed to its deliberation to correct one word mistakenly included in a particular instruction; and

(3) whether the damages awarded to plaintiff by the jury were contrary to the evidence presented.

### I.

■■ Regarding the first issue on appeal, defendants contend that where a party seeking to recover under the Dram Shop Act has contributed to the intoxication of the person whose intoxication caused the party's injury, that party is guilty of complicity with the intoxicated person, and, thus, is not an innocent suitor and may not recover under the Act.[1] Defendants urge that plaintiff's actions in accompanying Carl Krepfl on a tour of taverns on the night of June 15, 1968, evidenced, as a matter of law, that plaintiff was guilty of complicity and was barred from recovery thereby. Therefore, defendants conclude, the trial court erred in refusing to grant

---

[1] In their initial brief on appeal and at oral argument, defense counsel, on behalf of defendants, argue that when plaintiff and Carl Krepfl finally departed the Turf & Twig, plaintiff was aware of Carl's intoxicated condition and knew that he would have to eventually cross a dark, four-lane highway in order to get to the Clearview Motel. Knowing his condition, defendants argue, plaintiff abandoned Carl when he needed her most. Therefore, defendants conclude that, because plaintiff abandoned her decedent under the circumstances shown by the evidence and abandoned her duties regarding Carl Krepfl, she would be held to have terminated her relationship as his spouse and also to have abandoned her rights as his spouse, to claim injury to her support under the Dram Shop Act. To support their argument on this point, defendants rely heavily upon a principle set forth in *James v. Wicker* (1st Dist. 1941), 309 Ill.App. 397, 402, 33 N.E.2d 169, to the effect that one cannot recover under Section 14 of article VI of the Dram Shop Act (Ill. Rev. Stat., ch. 43, par. 135) for injuries sustained unless he is innocent. The principle has been reiterated time and again. (See *Forsberg v. Around Town Club, Inc.* (1st Dist. 1942), 316 Ill.App. 661, 666, 45 N.E.2d 513; *Pearson v. Renfro* (2nd Dist. 1943), 320 Ill.App. 202, 208, 50 N.E.2d 598; and *Holcomb v. Hornback* (4th Dist. 1964), 51 Ill.App.2d 84, 88, 200 N.E.2d 745). It is clear from a review of the record presented that defendants at no time advanced before the trial court this argument they now seek to proffer on appeal for the first time. In light of Supreme Court Rule 366(b)(2)(iii) (Ill. Rev. Stat. 1973, ch. 110A, par. 366(b)(2)(iii)), which states that a party may not urge as error on review of the ruling on his post-trial motion any point, ground, or relief not specified in the motion, we are compelled to disregard defendants' argument on the point.

their motion for a directed verdict and in refusing to enter a judgment *non obstante veredicto* in their favor.

◼◼ Section 14 of article VI of the Dramshop Act, which delineated liability in the instant matter (Ill. Rev. Stat. 1967, ch. 43, par. 135), reads in pertinent part:

> "Every person who is injured in person or property by any intoxicated person, has a right of action in his own name, severally or jointly, against any person who by selling or giving alcoholic liquor, causes the intoxication, in whole or in part, of such person. * * * An action shall lie for injuries to means of support caused by an intoxicated person or in consequence of the intoxication, habitual or otherwise, or any person resulting as aforesaid."

Further, the standards which guide the courts of this State with respect to the direction of verdicts and the entry of judgments *non obstante veredicto* were set down by our supreme court in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill.2d 494, 229 N.E.2d 504, wherein the court stated, at page 511 of the opinion, that verdicts ought to be directed and judgments *non obstante veredicto* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. On this appeal, we will be guided by the tenets set forth in *Pedrick*.

◼◼ In *Tezak v. Cooper* (2nd Dist. 1960), 24 Ill.App.2d 356, 362, 164 N.E.2d 493, this court enunciated the central principles with respect to the issue of complicity in a dram shop case, and we quote:

> "While the problem [of complicity] is not free from difficulty, it would appear that if there is a dispute in the evidence as to whether plaintiff voluntarily participated in the drinking, or if there is a dispute as to whether such participation, if any, amounted to a substantial or material participation, then the question becomes one of fact which should be submitted to the jury. Even if there is no dispute in the evidence, yet if fair-minded persons would draw different conclusions from the evidence, then it becomes the province of the jury to draw that conclusion which to them seems most reasonable. On the other hand, if the evidence is not disputed and if all reasonable persons would conclude that plaintiff voluntarily participated in the drinking to a material and substantial degree, then such participation bars plaintiff as a matter of law."

The standard regarding voluntary participation to a material and substantial extent has been most recently reiterated in *Sapp v. Johnston* (3rd Dist. 1973), 15 Ill.App.3d 119, 122, 303 N.E.2d 429, and Illinois Pattern

Jury Instruction No. 150.17, which was provided to the jury in the case at bar, also reflects the language with respect to voluntariness and material and substantial extent.

In *Holcomb v. Hornback* (4th Dist. 1964), 51 Ill.App.2d 84, 200 N.E.2d 745, we took the opportunity, at pages 88-90 of the opinion, to discuss at great length the legal precedents and concepts relating to the issue of complicity. We stated:

> "The law is established beyond controversy that a person cannot recover under section 14 [par. 135] of the Dramshop Act for injuries sustained unless he himself is innocent. The injured party must be free from complicity. 'It has been repeatedly held that a plaintiff who participates in bringing about the intoxication of another may not recover under the Dramshop Act * * * participation does not, in our opinion, necessarily mean that the plaintiff must supply the liquor.' Meier v. Pocius, 17 Ill.App.2d 332, 150 N.E.2d 215. The defense of complicity in a dramshop action is an offspring of the ancient doctrine that a person should not and cannot profit from his own wrongful acts. Osinger v. Christian, 43 Ill.App.2d 480, 193 N.E.2d 872; Baker v. Hannan, 44 Ill.App.2d 157, 194 N.E.2d 563; Taylor v. Hughes, 17 Ill.App.2d 138, 149 N.E. 2d 393.
>
> The Appellate Court, Third District, in Phenicie v. Service Liquor Store, 23 Ill.App.2d 492, 163 N.E.2d 220, affirmed a summary judgment entered in favor of the defendant by the trial court and held that where a plaintiff participated in drinking with an intoxicated person to the extent of one and one-half glasses of beer out of a quart of beer, where the party inflicting the injury had purchased the beer, such participation by the plaintiff in drinking with the intoxicated person exonerated the liquor store operator from liability under the Dramshop Act. In its opinion, the court stated on Page 496 of 23 Ill.App.2d, and Pages 221-222 of 163 N.E.2d as follows:
>
>> 'In the case at bar, as in the Meier v. Pocius case, supra, the ultimate question to be decided was whether there was a triable issue of fact on the question of complicity, that is participation by plaintiff in Davis' drinking and subsequent intoxication. * * * Assuming that Davis was in fact intoxicated, a fact which plaintiff was required to establish, then participation by plaintiff in Davis' drinking exonerates the defendant from liability under the Dramshop Act.'
>
> Although some of the cases on this question appear to dwell on how much liquor the plaintiff has had to drink, it would appear

that the extent of his willing participation in the drinking activities of the person who becomes intoxicated is the real test and the injured person need not purchase any of the liquor consumed to be a willing party and guilty of complicity. James v. Wicker, supra.

Plaintiff strongly contends that for her to be guilty of complicity as a matter of law that her participation in the drinking must be to a substantial and material degree. With this contention, we do not agree. We think the better rule and the real test is whether or not the injured party willingly and voluntarily participated in the drinking activity of the person who became intoxicated and inflicted the injury. Participation in drinking is not dependent upon the amount of drinking indulged in by the plaintiff but the fact of drinking itself, so long as the participation is voluntary and admitted."

■■ Turning now to the matter at hand, we must consider not only the holding of *Pedrick* and the principles stated in the cited cases, but also the record before this court on appeal. We find, after a thoroughgoing review, that the trial court committed no error in refusing to grant defendants' motion for a directed verdict or in refusing to enter a judgment *non obstante veredicto*. We believe that the question of the extent and voluntariness of plaintiff's participation in her husband's drinking on the night of the accident, viewing the matter in light of the issue of her complicity, was a question which was properly submitted to the jury for its consideration. On the record, we cannot say that her complicity had been established by the evidence as a matter of law.

Many relevant facts bore upon the issue of complicity in the court below: plaintiff and her husband were newlyweds of 6 months; Carl Krepfl was known to be troublesome when intoxicated; plaintiff, the trial court noted at one point in colloquy with counsel, appeared to be an easily intimidated person; the initial purpose of plaintiff's accompanying her husband was to get something to eat; plaintiff stated that her personal choice was to drink coke, and not some alcoholic beverage; plaintiff did not order her own drinks and merely sipped the Mogen David wine at the Wil-Lu Inn and the Turf & Twig; plaintiff asked the bartender at the Wil-Lu to refuse Carl further drinks and also asked Carl to stop drinking; and she refused to dance with Carl.

Moreover, and perhaps most importantly, the trial court and the jury were in a superior position, in relation to this reviewing court, to determine the credibility of the witnesses at trial and to determine the weight to be accorded their testimony.

A reading of the cases cited by the parties to this appeal in support of their respective positions demonstrates the importance which must be

attached to the peculiar, particular factual circumstances surrounding the issue of complicity in given cases. It is clear from that reading that, in this area of judicial determination, no two cases are factually exactly alike, though the facts in some cases do tend to be somewhat similar to those in others.

We have thoroughly reviewed the cases upon which defendants most heavily rely, many of which are mentioned in the *Holcomb* quotation set out earlier in this opinion. We find that they are unpersuasive, based upon a full and careful reading of the record with which we have been presented.

## II.

The second issue on appeal is whether the trial court committed reversible error in recalling the jury after the case had been submitted to its deliberation to correct one word mistakenly included in a particular instruction. To put matters in perspective, plaintiff's counsel had initially submitted two burden of proof instructions on the elements of the case. A number of errors and omissions marred each of the tendered instructions, and the trial court and defense counsel requested certain changes, which plaintiff's counsel agreed to make. One instruction read, in part:

> "The plaintiff has the burden of proving each of the following propositions:
> 1. That CARL KREPFL was intoxicated at the time of his death."

Counsel for both parties and the trial court agreed, during a conference held on a Friday during the trial, that the instruction should be modified to read, in pertinent part, "intoxicated at the time of the accident." On the following Monday, counsel for plaintiff stated that he was tendering the said instruction as modified. However, when the instruction was tendered to the court, it still read "intoxicated at the time of his death," but, from the record before us, it appears that neither the trial court, nor counsel for any of the parties, noticed that the change which had been agreed to had not been made.

Subsequently, on at least two occasions during closing argument, defense counsel used the phrase "intoxicated at the time of his death" in regard to plaintiff's burden of proof. Moreover, the trial court, in instructing the jury subsequent to the parties' closing arguments, read the instruction in its unmodified form, using the phrase "intoxicated at the time of his death."

After the jury had been in deliberation for somewhat less than 1 hour, counsel for plaintiff discovered the error, returned to court, and pointed it out to the trial judge. The judge then attempted to reach counsel for defendants at their respective offices in order that the error might be

corrected. Unfortunately, defense counsel could not be contacted. The trial court then recalled the jury and struck the word "death" from the instruction in question, inserting in its stead the word "accident."

During argument on post-trial motions, the trial court stated the reasons for the modification, and we quote from the record:

> "* * * This court tried to get a hold of you lawyers and for some reason I wasn't able to get a hold of a single one of you except the Plaintiff's lawyer who was here after the Court made a call; the bailiff and others here, I asked the Jury to come out, and I instructed the Jury, I struck out the word 'death' and inserted in lieu, the word 'accident.' The reason that was done was because the Court was not able to contact you gentlemen after I contacted your respective offices and I thought it would be improper to give the Jury the instruction at the of death [sic] because it appeared obviously [sic] to the Court that it was an inadvertent mistake after I had given this, and I don't think the Court should permit a technicality to go to the Jury where he could have specifically instructed them to change it. These gentlemen, I'm certain, they made the notes to change it, but what happened, I suppose, when the girl typed it up, she simply didn't change it and somebody should have caught [sic] my attention to it, but they didn't."[2]

Section 67(1) of the Illinois Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 67(1)) provides in pertinent part, that a court "shall in no case, after instructions are given, clarify, modify or in any manner explain them to the jury, otherwise in writing, unless the parties agree otherwise." In *Mathes v. Basso* (1st Dist. 1968), 104 Ill.App.2d 237, 244 N.E.2d 362, this court stated at pages 239-240:

> "When a case has been submitted to the jury for deliberation, the trial court should not, in the absence of stipulation between the parties, further advise or instruct the jury or otherwise attempt to clarify any point on which they may raise a question, *where to do so would be prejudicial to one of the parties. City of Mound City v. Mason*, 262 Ill. 392, 104 N.E. 685; * * *." (Emphasis supplied.)

■■ We believe the trial court's actions in correcting a single word in a single instruction, which by all accounts had been agreed to by all parties involved, resulted in no prejudice to defendants in the court below.

---

[2] The record before us does not reveal the specific circumstances surrounding the changing of the word "death" to the word "accident." It is unclear whether the jury had been provided with written instructions; whether, if the jury did possess said written instructions, the alteration was made on that copy of the instructions; or whether the alteration was made on the trial judge's copy of the instructions.

First of all, defense counsel, with the knowledge that the instruction should have read "at the time of the accident," on at least two occasions during final argument used the phrase "at the time of his death," which, in our opinion, although it may have been inadvertent, compounded the problem. Secondly, plaintiff's objection to defense counsel's use of the phrase "at the time of his death" to characterize plaintiff's burden of proof was overruled by the trial court. Finally, it is defendants' burden before this court to indicate the nature of the prejudice they have been subjected to by virtue of the trial court's actions in modifying the instruction. We do not feel that defendants have satisfied that burden.

From a reading of the record, there is nothing whatsoever to indicate that anything further was undertaken or said by the trial court, save the change of the single word. Therefore, we find that the trial court committed no error in this regard.

### III.

■■ Finally, defendants urge on appeal that the damages awarded plaintiff were excessive, were prompted by prejudice, and were not supported by the evidence adduced below. We find, upon the record, that the arguments are without merit.

For these reasons, then, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

HAYES, P. J., and LEIGHTON, J., concur.