DEBORAH NELSON, Plaintiff-Appellant, *v.* THEODORE ARAIZA *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 61408

Opinion filed November 9, 1976.

Alan C. Mendelson, of Chicago, for appellant.

Heineke & Schrader, of Chicago, for appellee Juan Guel *et al.*

John Fako, Jr., of Chicago (Edwin A. Strugala, of counsel), for appellee Luke Savich *et al.*

Mr. JUSTICE JIGANTI delivered the opinion of the court:

This action was brought by Deborah Nelson to recover damages for personal injuries she sustained in an automobile accident during the early morning hours of March 30, 1970. Plaintiff brought suit against the driver of the automobile, Theodore Araiza, and against Juan and Valentina Guel, d/b/a Juan & Tina's Lounge, Luke Savich, d/b/a Luke's Lounge, and Anna Savich, owner of the premises known as Luke's Lounge, under section 14 of the Dramshop Act (Ill. Rev. Stat. 1969, ch. 43, par. 135). At the close of plaintiff's case defendants moved for a directed verdict based on the affirmative defense of complicity which had been anticipated in plaintiff's testimony. The trial court directed the verdict in favor of the defendants.

Plaintiff appeals the disposition on the grounds that complicity as a matter of law was not proved, and that the question should be submitted to the jury.

On the evening of March 2, 1970, Deborah Nelson was 21 years old and lived at 10641 Oglesby Avenue, Chicago, Illinois. She had just finished washing her hair when her girlfriend, Marlene O'Neil, came over and convinced her to go out for a few drinks. They walked over to Juan and Tina's Lounge at the corner of 106th and Hoxie Avenues, arriving somewhere between 7 p.m., and 8 p.m. Neither Juan nor Tina Guel was in the tavern at the time, but among the 10 or 12 patrons were two of Deborah's girlfriends, Judy Walsh and Kathy Dawson, and defendant Theodore Araiza. Araiza was seated at the bar with several beer bottles and a glass in front of him and appeared to the plaintiff to be "pretty drunk." He called plaintiff and Marlene over to him and offered to buy them a drink. Plaintiff took the beer Araiza offered and joined her girlfriends at their table.

Plaintiff had known Araiza for a couple of years, but neither she nor her friend Marlene liked him much. He had previously dated Marlene, and, although she expressed little interest in reviving any relationship, he was apparently taking every opportunity to persuade her to do so. Plaintiff did not associate with him because her current boyfriend did not approve of Araiza and she preferred not to be seen with him. During the time they were at Juan & Tina's Lounge, Araiza spent most of his time at the bar drinking beer. Plaintiff was not aware of how much Araiza consumed while she was there, but noticed that he was behaving in a very loud and boisterous manner.

Plaintiff did not spend any time with Araiza after he bought her the beer, but talked with several other people she knew. She did not have any money with her, so Judy bought her a second beer. At about 10 p.m., plaintiff put her coat on, said good-bye to Judy and Kathy, and asked Marlene if she was ready to leave. Marlene agreed to go with her, and the two girls decided to walk over to the home of Bill and Sue Cooper, a distance of about five blocks. As they were going out the door, Araiza called Marlene back and asked where they were going. When told that the Coopers' place was their destination, Araiza replied that he would give them a ride. Plaintiff declined his offer, but he kept insisting that he would take them, pressuring Marlene in particular. Araiza was a physically imposing man, about six feet tall and weighing about 250 lbs., and was very vociferous and forceful in his persuasion. The girls decided that since it was only a short distance, they would avoid an unpleasant "hassle" and go with him.

On the way to the Coopers' residence at 107th Street and Yates Avenue, Araiza made an unscheduled stop at Luke's Lounge. Saying he would be right out, he left the girls in the car, went in, and came out a few minutes later with four six-packs of beer. They arrived a few minutes later, between 10 and 10:30 p.m., at the Coopers' house, which was about two blocks walking distance from where plaintiff lived. They spent the next few hours talking and listening to records. Plaintiff had one or two cans of beer while she was there. Araiza, who was already intoxicated, drank some eight cans of beer while at the Coopers'.

At about 2 a.m., plaintiff decided to go home because she was getting tired. Again she asked Marlene if she wanted to leave and again Marlene said she too was ready to go home. Again Araiza protested vociferously, insisting that Marlene go out with him. Marlene finally agreed to go with him if plaintiff would also come along. Plaintiff at first refused, repeating her intention to go home. Eventually she yielded to the pleas of now both Marlene and Araiza, but on the condition that she be allowed to drive. She took the car keys and drove to King Kastle on the 9200 block of Commercial Avenue, some 20 blocks from where plaintiff lived. Plaintiff thought that if Araiza had something to eat, he would "probably sober up a little," and both she and Marlene were hungry. Since neither she nor Marlene had any money, Araiza gave plaintiff some money with which to buy hamburgers and coffee. Araiza and Marlene remained in the car while plaintiff went in to purchase the food. When she came out, about 20 minutes later, Araiza had moved back into the driver's seat, so plaintiff got into the back seat. While they were eating the hamburgers and drinking the coffee, plaintiff tried to persuade Araiza to let her drive again. He refused, insisting that he could "handle it" and that she shouldn't worry. By this time, plaintiff was very tired. She had no money, it was close to 3

a.m., and it was raining. Buses ran only once an hour from the area of King Kastle to the neighborhood where plaintiff lived. She and Marlene told Araiza they wanted to go home. Araiza did not want to take them home, and became very upset. He pulled away suddenly, and after they had travelled a distance of several blocks, the accident occurred causing plaintiff serious injuries.

The issue raised on this appeal is whether the evidence of complicity did in fact so overwhelmingly favor the dramshop defendants that no verdict in plaintiff's favor could ever stand. While the Dramshop Act itself sets forth no defenses to an action, the courts have long held that one not an "innocent suitor" would be barred from recovery (*Forsberg v. Around Town Club, Inc.* (1942), 316 Ill. App. 661, 666, 45 N.E.2d 513). Early cases held that wrongful conduct on the part of the plaintiff, such as being an "active and persistent agent" in bringing about the intoxication of another constituted contributory negligence which precluded recovery. *Hays v. Waite* (1890), 36 Ill. App. 397, 399; *Douglas v. Athens Market Corp.* (1943), 320 Ill. App. 40, 49 N.E.2d 834.

> "* * *[However], when technically considered, contributory negligence is no defense to an action * * * under the Dram Shop Act because the question of negligence of the dram shop keeper or the owner of the premises is in no way involved. But it does not follow that plaintiff can recover in such an action where her own conduct contributed to bring about her injuries * * *." *James v. Wicker* (1941), 309 Ill. App. 397, 402, 33 N.E.2d 169.

The courts gradually refined this concept into what is now known as complicity, though its boundaries remain vague. The standard which has evolved has been summarized in Illinois Pattern Jury Instructions, Civil No. 150.17 (2d ed. 1971), which states that a plaintiff cannot recover if he (1) willingly caused the intoxication of the tortfeasor; (2) willingly encouraged the drinking which caused the intoxication of the tortfeasor; or (3) voluntarily participated to a material and substantial extent in the drinking which led to the intoxication of the tortfeasor.

Defendant argues that, by initially accepting the beer Araiza purchased for her and by remaining in or about his company, plaintiff voluntarily participated to a material and substantial extent in the drinking activity which caused his intoxication. In support of the contention that such participation constituted admitted and undisputed evidence of complicity, thereby satisfying the *Pedrick* test that no contrary verdict based on that evidence could ever stand (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504), defendants cite a number of cases wherein the court found complicity barred plaintiff's recovery as a matter of law. In *Forsberg v. Around Town Club, Inc.* (1942), 316 Ill. App. 661, 665, 45 N.E.2d 513, the court stated that "the rule

is uniform that where an injured person contributes in whole or in part to the intoxication of his assailant, he cannot recover," and held that, as a matter of law, complicity had been proved. However, in *Forsberg*, the plaintiff was himself intoxicated, had bought his assailants a round of drinks, and had arguably provoked his assailants.

Defendants point to the statement of the court in *Meier v. Pocius* (1958), 17 Ill. App. 2d 332, 334-35, 150 N.E.2d 215, that "[p]articipation does not, in our opinion, necessarily mean that the plaintiff must supply the liquor" to support their position that plaintiff did participate to a material and substantial extent in bringing about Araiza's intoxication. In *Meier*, however, plaintiff testified in his deposition that, while he and his brother embarked on a tour of taverns together and bought each other drinks, both he and his brother were sober when they left defendant's tavern. Either there was no triable issue as to the intoxication of the tortfeasor or plaintiff had already admitted his participation.

In *Phenicie v. Service Liquor Store, Inc.* (1960), 23 Ill. App. 2d 492, 163 N.E.2d 220, the plaintiff was injured while riding in a car driven by an intoxicated driver. The court affirmed the granting of defendant's motion for summary judgment, based on evidence which showed that the driver had initially stopped at plaintiff's house trailer on the evening in question on his way to buy some beer, later met plaintiff during breaktime at plaintiff's National Guard meeting, and left with plaintiff when the meeting was over to return to plaintiff's house trailer. There they split a quart of beer and together had embarked on a journey to the town of St. Joseph when the accident occurred. The purpose of their being together was to drink together, and in such a case, plaintiff's admission that he did participate at least to the extent of a quart of beer barred his recovery.

Defendants cite *Holcomb v. Hornback* (1964), 51 Ill. App. 2d 84, 200 N.E.2d 745, which found that plaintiff willingly and voluntarily participated in the drinking activity to an extent sufficient to bar recovery. But *Holcomb* involved other factors unrelated to the drinking activity. Plaintiff and her assailant knew each other, had spent the night together, and had emotional ties which were apparently strained the morning of the occurrence. On that morning the assailant purchased two bottles of beer for the plaintiff, one of which she consumed prior to the assault.

Plaintiff cites a number of cases in which the court has held that the issue of complicity was a question of fact for the jury. In *Busser v. Noble* (1959), 22 Ill. App. 2d 433, 161 N.E.2d 150, plaintiff was injured while riding in a car driven by an intoxicated driver. She had gone to a tavern with a girlfriend and had "some beer," the exact amount of which was not shown. The driver met plaintiff at the tavern where he also had some beer, and together with some friends, they drove to a second tavern. On the way, the driver and some of the group consumed whiskey in the car.

At the second tavern, plaintiff again had "some beer"; the driver had three or four beers and three mixed drinks, and behaved in a "loud and boisterous" manner.

When the driver left the tavern, plaintiff followed him to his car, and after some altercation they drove off and the accident occurred. The trial court found that plaintiff's participation barred her recovery as a matter of law and directed the verdict in favor of the dramshop defendants. But on appeal, the court held that evidence that plaintiff had been in the company of her driver while he was drinking and that she had consumed some intoxicating liquor herself presented questions of fact which should have been submitted to a jury for a determination of whether her conduct constituted complicity.

In *Krepfl v. Burke* (1974), 24 Ill. App. 3d 173, 321 N.E.2d 30, plaintiff, wife of the decedent, spent most of the evening going from tavern to tavern with her husband. At the first tavern plaintiff had a few sips of the wine which the decedent had bought for her, while he drank beer and whiskey. At one point, she asked the bartender not to serve decedent anymore, but he continued to do so. Later, she asked decedent not to drink anymore, but he only became angry and ignored her request. Plaintiff and decedent went to another tavern which refused to serve them, and on to a third where decedent ordered a martini for himself and another glass of wine for plaintiff. After the bartender there refused to serve the decedent, he and plaintiff decided to walk home. After they had walked some distance, decedent decided to go back to buy some cigarettes; plaintiff continued by herself. Decedent was struck by a car and killed as he returned from the tavern with his cigarettes. The court found that the extent and nature of plaintiff's participation in decedent's drinking, in light of the issue of her complicity, were questions of fact properly submitted to the jury.

Even a casual reading of cases cited by the parties suggests the importance of the particular circumstances surrounding the occurrence in each case in which complicity is an issue. (*Krepfl v. Burke* (1974), 24 Ill. App. 3d 173, 180-81, 321 N.E.2d 30). The court in *Tezak v. Cooper* (1960), 24 Ill. App. 2d 356, 362, 164 N.E.2d 493, articulated a workable approach to the issue of complicity in dramshop cases:

> "* * *[I]t would appear that if there is a dispute in the evidence as to whether plaintiff voluntarily participated in the drinking, or if there is a dispute as to whether such participation, if any, amounted to a substantial or material participation, then the question becomes one of fact which should be submitted to the jury. Even if there is no dispute in the evidence, yet if fairminded persons would draw different conclusions from the evidence, then

it becomes the province of the jury to draw that conclusion which to them seems most reasonable. On the other hand, if the evidence is not disputed and if all reasonable persons would conclude that plaintiff voluntarily participated in the drinking to a material and substantial degree, then such participation bars plaintiff as a matter of law."

Coupling that standard with the test for directing verdicts set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504, we do not find that complicity as a matter of law was proved, nor that the evidence of complicity so overwhelmingly favored the dramshop defendants that no verdict in plaintiff's favor could ever stand. Evidence that plaintiff began the evening with no intention of spending it with Araiza, that she spent little or no time sitting or visiting with him, attempted to leave by herself at two different times, left with Araiza and Marlene under what might be construed as psychological compulsion on the condition that she be allowed to drive and under the illusion that getting Araiza something to eat would sober him up, and that she then found herself 20 blocks from home, without any money at 3 a.m. on a rainy night, might lead fairminded persons to draw different conclusions as to the nature of her "participation." The resolution of such a dilemma is the province of the jury.

For the foregoing reasons, the judgment is reversed and remanded for a new trial.

Reversed and remanded.

STAMOS, P. J., and HAYES, J., concur.