CINDY THOMPSON, a Minor, by Margaret Hansen, her Mother and Next Friend, Plaintiff-Appellee, *v.* PATRICIA TRANBERG *et al.*, d/b/a Pat's Den *et al.*, Defendants-Appellants.

Second District (1st Division)    No. 75-333

Opinion filed February 7, 1977.

Thomas P. Stepanich, of Collins, Stepanich & Collins, of Waukegan, and Kralovec, Sweeney, Marquard & Doyle, of Chicago, for appellants.

David A. Decker, of May, Decker & Associates, of Waukegan, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Cindy Thompson, a minor, was severely injured when she was struck by a car driven by an allegedly intoxicated driver, Glenn Theroux. An action was filed on behalf of the minor against the defendants Patricia Tranberg and Denise Caraher, as operators of "Pat's Den," and against the defendant Edward O'Neill, the operator of "Hilltop Tap," alleging violation of the Liquor Control Act (Ill. Rev. Stat. 1973, ch. 43, par. 135), commonly referred to as the Dramshop Act.[1] Margaret Hansen, the mother of Cindy Thompson, individually, joined in the suit claiming injury to her property caused by her obligation to pay medical and hospital bills for her daughter.

The complaint essentially alleged that the defendants had sold or given alcoholic liquors to Theroux which resulted in his intoxication, and that he struck Cindy Thompson while so intoxicated. The defendants denied the allegations. At trial, the jury answered special interrogatories finding that each of the defendants had caused the intoxication of Theroux and rendered a verdict in favor of Cindy Thompson in the amount of $100,000, and in favor of Margaret Hansen in the amount of $50,000.[2] Pat's Den appeals contending that Margaret Hansen did not incur any injury to her "property" on the theory that the term does not include pecuniary losses. This defendant also contends that the court erred in not permitting a showing that the hospital and medical expenses were paid by an insurance company in order to negative the claim of injury to property.

---

[1] The driver was sued in a separate count charging negligence. This portion of the case was dismissed before it was submitted to the jury and is not before us on appeal.

[2] Each judgment was reduced to $15,000.

Hilltop Tap appeals, contending that the court erred in refusing to direct a verdict in favor of Hilltop and that the special interrogatory, together with the verdict, were against the manifest weight of the evidence.

■■ The contention on behalf of Pat's Den that there was no proof of injury to the property of Margaret Hansen is not persuasive. Medical and hospital expenses are compensable under the Dramshop Act. (*Shepherd v. Marsaglia*, 31 Ill. App. 2d 379, 383-86 (1961), cited with approval in *Graul v. Adrian*, 32 Ill. 2d 345, 347 (1965). See also *Jackson v. Navik*, 37 Ill. App. 3d 88, 97 (1976).) Nor does the fact that the expenses were in fact either wholly or partly paid from the collateral source of insurance proceeds available to the plaintiff Margaret Hansen, prevent recovery. (*Bireline v. Espenscheid*, 15 Ill. App. 3d 368, 369-70 (1973).) We perceive no considerations of policy which should lead us to change these well established rules. We find nothing in the Dramshop Act or in its underlying policy which would relieve dramshops of even limited responsibility for redressing injuries based on the fortuitous circumstance that an injured party has planned and paid for insurance coverage of family expenses.

The defendant Hilltop in support of its contention that a verdict should have been directed principally argues that the 1971 amendment to the Illinois Liquor Control Act limits the application of the statute to the dramshop "which *causes* the intoxication rather than to any dram who *contributed* to the condition." (Emphasis added.)

Article VI, section 14 of the Liquor Control Act, as pertinent states:

> "Every person who is injured in person or property by any intoxicated person, has a right of action * * *, severally or jointly, against any person who by selling or giving alcoholic liquor, causes the intoxication of such person. * * * An action shall lie for injuries to means of support caused by an intoxicated person or in consequence of the intoxication * * *." Ill. Rev. Stat. 1973, ch. 43, par. 135.

Prior to the amendment of the statute in its present form in 1971, the reference in the statute to causing the intoxication included the phrase "in whole or in part." (See Ill. Rev. Stat. 1967, ch. 43, par. 135.) This defendant claims that the effect of the deletion is to restrict liability under the act to the dramshop which causes intoxication and exclude from liability a dramshop which merely contributes to the intoxication. Under the facts in the record, this defendant argues that the other defendant, Pat's Den, was wholly responsible for the intoxication of Theroux.

The amendment basically establishes the requirement that there must be evidence that the charged dramshop has not merely furnished a negligible amount of intoxicating liquor but has in fact caused the intoxication. *Caruso v. Kazense*, 20 Ill. App. 3d 695, 697 (1974).

It does not follow, however, that the legislature intended to limit recovery to a single defendant who caused the intoxication. The statute recognizes this by giving the right of action "severally or jointly" against any person who causes the intoxication. (Ill. Rev. Stat. 1973, ch. 43, par. 135; see Comment, *The Illinois Dramshop Act: Effect of the 1971 Amendment*, 1974 U. Ill. L.F. 466, 472-73.) Moreover, the ordinary meaning of the word "causes" as used in the statute does not exclude the possibility that two or more causes may join to result in a single intoxication. If the legislature had intended that liability be limited to the one dramshop which is most responsible for causing the intoxication, it would most likely have retained the alternative that intoxication may be caused "in whole" rather than deleting it with the "in part" alternative. Further there is a general recognition in the law that causation giving rise to liability may be the result of two or more independent acts. (See, *e.g.*, *Perfect v. Kaley*, 130 Ill. App. 2d 61, 65 (1970); *Johnson v. City of Rockford*, 35 Ill. App. 2d 107, 120 (1962). See also Illinois Pattern Jury Instructions, Civil, No. 15.01 (2d ed. 1971).) Similarly in workmen's compensation cases the petitioner need not prove that the defendant's act was the sole causative factor or even that it was the principal causative factor in the resulting injury. See *Republic Steel Corp. v. Industrial Com.*, 26 Ill. 2d 32, 45 (1962).

■■■ In interpreting the Dramshop Act, it is unnecessary to import all of the general tort principles of causation without qualification. We have concluded that the legislative intention in the use of the word "causes" in the Dramshop Act is best effectuated by a focus on whether the defendant's conduct was a material and substantial factor in producing or contributing to produce the intoxication. This conclusion seems to accord with the background surrounding the legislative amendment of 1971. There had been a number of legal decisions under the prior act defining "in whole or in part" strictly against a defendant with the result that proof of gift or sale of intoxicating liquor in any degree no matter how slight was sufficient. (See, *e.g.*, *Baker v. Sauber*, 62 Ill. App. 2d 66, 71 (1965); *Brown v. Butler*, 66 Ill. App. 86, 89 (1895).) In some cases, however, it was recognized that the elements of the quantity of liquor consumed and the remoteness in time could support a denial of recovery. (See, *e.g.*, *Pellico v. Jackson*, 70 Ill. App. 2d 313, 328-29 (1966); *Schneider v. Kirk*, 83 Ill. App. 2d 170, 180 (1967).) It seems fair to conclude that the intent of the legislature with respect to the 1971 amendment was to eliminate the possibility that dramshop liability could be founded on any consumption of alcohol no matter how slight but to impose liability only when intoxication could be said as a matter of fact to have been caused by a dramshop.

In this respect we note that in dramshop litigation the issue of complicity in causing the intoxication is often determined by the material and substantial factor test. A plaintiff is not permitted to recover under the Dramshop Act if he voluntarily participated to a material and substantial extent in the drinking which led to the intoxication of the tortfeasor. (Illinois Pattern Jury Instructions, Civil, No. 150.17 (2d ed. 1971); *Nelson v. Araiza*, 43 Ill. App.3d 685, 688 (1976); *Krepfl v. Burke*, 24 Ill. App. 3d 173, 178-79 (1974); *Tezak v. Cooper*, 24 Ill. App. 2d 356, 362 (1960).) The fact that the test has been adopted to determine whether complicity in the drinking which produced intoxication will bar recovery suggests that the test may also be of assistance in determining the cause of the intoxication itself.

■■ Various factors must be considered in determining whether liquor consumed at a given dramshop is a material and substantial factor in causing the intoxication. Some of the relevant elements are discussed in the Restatement (Second) of Torts §433 (1965).

"The following considerations are in themselves or in combination with one another important in determining whether the actor's conduct is a substantial factor in bringing about harm to another:

(a) the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it;

(b) whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, * * *;

(c) lapse of time."

The trier of facts determines whether the particular defendant did, in fact, cause the intoxication, subject of course to review as to the sufficiency of the evidence to establish the cause in fact. *Caruso v. Kazense*, 20 Ill. App. 3d 695, 697; *Nelson v. Araiza*, 43 Ill. App. 3d 685, 690-91 (1976).

■■ In the case before us we conclude that within the meaning of the statute, the evidence that Hilltop was a material and substantial contributing cause of the intoxication of Theroux was adequate to support the jury's verdict.

Hilltop principally relies on the fact that Theroux testified that he had one small beer or possibly two at this tavern; and that its bartender testified that Theroux had come in to use the washroom, was in the place only five minutes and left after having only "a couple of sips" of beer. Hilltop further notes that the accident happened a short distance away and a short time later. Theroux was shown to have between .26 and .27 percent alcohol in his blood at that time as determined by a breathalizer

test. From this the defendant reasons that the intoxication was therefore caused by the prior drinking and that proof that Hilltop caused the intoxication in any way was lacking.

However, the evidence of Theroux's drinking at Hilltop is not so limited. There were circumstances from which the jury could reasonably infer that the testimony of both Theroux and the Hilltop bartender was not credible. It was established by expert testimony that the hypothetical person based on the evidence would have had to consume approximately 20 ounces of 100 proof alcohol or 20 twelve-ounce beers as a minimum to reach a blood alcohol level of .27. Theroux's testimony was that he had arrived at Pat's Den in the morning; had two or three shots of whiskey which he chased with an equal number of glasses of beer; that he began to drink beer only but did not know how many he drank before he left at approximately 12:30. The bartender at Pat's Den said that Theroux did not appear to be intoxicated when he left. There was testimony that he then walked home, ate a sandwich, watched television and perhaps took a nap. He said he did not drink anything at home. He returned to Pat's Den later that day, according to his testimony. There is, however, a substantial conflict as to when he came back, when he left and how much he drank. Theroux testified that he returned to Pat's Den some time before it was dark and was willing to accept counsel's suggestion that it was possibly as late as 8 or 9 o'clock in the evening. He stated that he began to drink shots of whiskey chased by beers, switching to beer alone and that he may have had one or two or three of these whiskey and beer combinations before drinking beer alone. Theroux, however, was impeached by a prior statement in which he claimed to have had only one beer in Pat's Den on his return.

There was also the testimony of Judy Smith, who had tended bar from noon to 9 o'clock in the evening in Pat's Den on the date in question. She testified that Theroux arrived at 5:30 and left at 6 o'clock that evening and during that time he had only one small glass of beer. She also stated that while Theroux appeared to have been drinking he did not seem intoxicated.

There was also considerable conflict as to what happened after Theroux left Pat's Den. There was testimony that some time that evening an acquaintance, Boyd Nelson, joined him and that they walked to Theroux's residence to get his automobile. It was dark by this time. Theroux testified that at this time he did not think he felt unusual or had any trouble driving. He and Nelson drove to the Hilltop Tap. Marvin Johnson, a friend of Theroux's, who was on duty tending bar from 4:30 in the afternoon to 3 o'clock in the morning testified that Theroux arrived at the Hilltop Tap between 10 and 11 o'clock that evening with Boyd. However, the testimony was impeached by Johnson's prior inconsistent

statement that he could not pinpoint the time other than to say it was after dark when business was slow, perhaps as early as 8 o'clock. Johnson stated that Theroux came in primarily to use the washroom and that Theroux and Boyd each ordered a single six- or seven-ounce glass of beer and that after Theroux used the washroom he only had a couple of sips of beer when he announced he was tired and was going home. According to Johnson's testimony Theroux left after being there only five minutes. Johnson stated he did not observe Theroux enough to have an opinion as to whether he was intoxicated while he was in the Hilltop Tap. Theroux, on the other hand, stated he had one or possibly two small glasses of beer at the Hilltop although he did not believe he was there very long.

From this testimony it is clear that if the bartenders are to be believed Theroux drank only one beer after 5:30 in Pat's Den and drank only two sips of beer at the Hilltop Tap. And if Theroux is to be believed he either drank one beer at Pat's Den in the evening or possibly in excess of six drinks and perhaps as many as two beers at the Hilltop Tap. In light of the expert testimony which established that Theroux had consumed a minimum of 20 drinks a jury might reasonably have inferred that more liquor was consumed at both taverns than was admitted by defendants and their employees in direct testimony. Theroux testified that he drank only at defendants' dramshops on the date in question. The jury was not required to make an inference consistent with his testimony and with the testimony of the Hilltop bartender in view of the fact that there was a considerable discrepancy in the amount of drinking which defendant did and where he did it. Viewing the entire record under the *Pedrick* rule (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 504 (1967)), and considering the testimony and the legitimate inferences the jury could draw from those facts and circumstances in its aspect most favorable to the plaintiffs, the trial court did not err in refusing to direct a verdict or to enter a judgment notwithstanding the verdict.

We therefore affirm the judgments as to each defendant.

Affirmed.

RECHENMACHER, P. J., and GUILD, J., concur.