(No. 26652.—)

MARY OSBORN *et al.*, Appellees, *vs.* WILLIAM LEUFFGEN
*et al.*, Appellants.

*Opinion filed November 17, 1942—Rehearing denied Jan. 12, 1943.*

LORD, BISSELL & KADYK, (DAVID J. KADYK, RAYMOND
WEARING, and GORDON R. CLOSE, of counsel,) for appellants.

RATHJE, HINCKLEY, BARNARD & KULP, (FRANCIS E.
HINCKLEY, and JAMES P. WALSH, of counsel,) for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Mary Osborn and her four minor children brought suit under the civil liability provisions of the Liquor Control Act( Ill. Rev. Stat. 1941, chap. 43, par. 135,) against appellants, who were the tavern keeper, his bartender, and the owner of the tavern building where Hope J. Osborn, who was the husband of Mary Osborn and the father of the four minor children, sustained injuries resulting in his death. The defendants offered no evidence, but presented motions asking for a directed verdict in their favor. The court reserved ruling on the motions. The case was submitted to a jury and a verdict returned in favor of plaintiffs for $4800. Defendants then filed their written motions in the alternative for judgment notwithstanding the verdict and for a new trial. The court allowed the motion for judgment notwithstanding the verdict, and judgment was entered in favor of defendants. On appeal to the Appellate Court for the First District the judgment for defendants notwithstanding the verdict was reversed. A petition for appeal to this court has been allowed, and we now have for consideration the question whether the trial court was justified in setting aside the verdict and entering a judgment in favor of defendants:

The sole point raised on this appeal is that the evidence did not show that the fatal assault made upon decedent in defendants' tavern resulted from the intoxication of his assailant. This limits our consideration of the case to the one question of law whether when all the evidence is considered, together with all reasonable inferences from it in its most favorable aspect to the plaintiffs, there is a total failure to prove any necessary element of their case. (*Nelson* v. *Stutz Chicago Factory Branch,* 341 Ill. 387, 395.) The question presented is whether there is any evidence which, when standing alone and taken with its inferences most favorable to plaintiffs, tends to support their case

charged in the complaint. (*Walaite* v. *Chicago, Rock Island and Pacific Railway Co.* 376 Ill. 59, 62.) As stated by appellants, the only question in this case is whether there is any evidence which, when taken as true and considered most strongly in favor of plaintiffs, fairly tends to prove, or from which it can reasonably and legitimately be inferred, that Osborn died as the result of an assault made upon him by Dobry (his assailant), while the latter was intoxicated.

The decedent, Hope J. Osborn, at the time of the occurrence in question, was a switchman employed by the Illinois Central Railroad Company, and was living with and supporting out of his earnings his wife and four minor children. October 19, 1938, he finished his day's work about midnight, took one of the Illinois Central trains home, and after leaving the train, walked about three blocks toward his home and went to the tavern which was on the first floor of the building where he lived. There were then sitting at the bar of the tavern two acquaintances of his, Alex Berquist and Joseph Dobry. Dobry had been at the tavern and sitting at the bar before either Berquist or Osborn arrived. After Berquist's arrival, he and Dobry engaged in conversation and Berquist invited Dobry to have a drink with him. Dobry at the time was drinking a bottle of beer, and told Berquist that after he finished the bottle he had, he would have a drink with him. Dobry testified that when he finished his bottle, he had one with Berquist, and they were sitting there together when Osborn came in. The witnesses Helen Hrabar and her escort, William Lefkie, came in, and walked past the three men sitting at the bar, and on into the back room of the tavern. Miss Hraber testified that the three men were sitting in a group at the bar, upon which were glasses, and that they had been drinking. Lefkie testified that Dobry had a bottle of beer before him. The witness Lefkie also testified that the bartender who served them was not entirely sober, that witness could tell

from the bartender's conversation and actions that he had been drinking. These witnesses remained in the back room of the tavern about forty-five minutes, and during that time they heard loud talking, dice rolling, heated argument which quieted down and then started again, and heard Dobry talking in a loud and angry voice. The three men in the bar room, Dobry, Osborn, and Berquist, talked, played dice, and entered into angry and noisy controversies and discussions, which were referred to by the witnesses as arguments. The first game of dice among them broke up in a quarrel, and they played a second game which also ended in a quarrel, Osborn accusing Berquist of cheating. Dobry then took part in the dispute, and as he testified, one word led to another until the ensuing brawl terminated in the blow delivered by Dobry to Osborn, crushing and fracturing his nose, bruising and lacerating his face and eyes, knocking out some of his teeth, and fracturing his skull, the fracture extending from his nose to the eyes and into the back of his head to the base of his skull.

Defendants do not deny that Dobry, whose blow killed the decedent, had been drinking in the tavern, although the evidence as to just how much he consumed there is not exactly definite. Dobry at one place in his testimony said that he finished one full bottle and then had another one with Berquist, and at another time testified that he drank a bottle and a half of beer. The bartender, who was himself partially intoxicated, testified that he sold a bottle of beer to Dobry. It is an essential element of plaintiffs' case that the injuries inflicted upon Osborn resulting in his death were in consequence of the intoxication of Dobry, and that the alcoholic liquors served to him in defendants' tavern contributed in some degree, no matter how slight, to his intoxication. Beer is an alcoholic liquor, and it is a matter of general knowledge that all alcoholic liquors are intoxicating in varying degrees. It is well known that the effect of alcohol upon all persons is not the same but

may be widely different, and that an individual who has had only a slight amount to drink may in some instances be more dangerous than a person who shows signs of intoxication. The Supreme Court of Pennsylvania has said in the case of *Elkin* v. *Buschner,* 16 Atl. 102: "Whenever a man is under the influence of liquor so as not to be entirely himself, he is intoxicated. Although he can walk straight, attend to his business, and may not give any outward and visible signs to the casual observer that he is drunk, yet if he is under the influence of liquor so as not to be himself, so as to be excited from it, and not to possess that clearness of intellect and control of himself that he otherwise would have, he is intoxicated." The circumstances shown by the evidence that Dobry, Osborn, and Berquist had for a considerable time in the early hours of the morning been sitting at the bar, with glasses and bottles in front of them, that there were at hand in the tavern all the facilities for intoxication, that the bartender himself was partially intoxicated, that after playing one game of dice which ended in a heated quarrel they began another game, that Dobry was heard disputing with decedent in a loud and angry voice, and also the very viciousness of the assault upon decedent, when taken with the inferences therefrom most favorable to plaintiffs, tend to establish plaintiffs' claim that Osborn's death occurred in consequence of the intoxication of Dobry. True, Dobry himself testified that he was sober, but in considering a motion of this character the court must look only to the evidence which is favorable to the party moved against, and contradictory evidence is not considered. (*Hunter* v. *Troup,* 315 Ill. 293, 296.) The weight of the evidence is not before us, and in view of the fact that the record discloses some evidence tending to support the plaintiffs' case, it is our duty to affirm the judgment of the Appellate Court.

Accordingly, the judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*