Ramona Caruso *et al.*, Plaintiffs-Appellants, *v.* James Kazense, d/b/a Jim's Place, *et al.*, Defendants-Appellees.

(No. 73-184;

Third District—June 28, 1974.

Edward C. Moehle, of Moehle, Reardon, Smith and Associates, of Pekin, for appellants.

Robert E. Manning, of Peoria, for appellees.

Mr. JUSTICE DIXON delivered the opinion of the court:

This action was brought to recover damages under the Dram Shop Act (Ill. Rev. Stat. 1971, ch. 43, par. 135). A jury gave a verdict for defendants upon which the Circuit Court of Tazewell County entered the judgment from which this appeal is taken.

The plaintiff, Ramona Caruso, is the wife of Ronald Caruso; Chad Caruso and Rhonda Caruso are the minor children of Ramona and Ronald. James Kazense is the owner-operator of Jim's Place, a tavern in Creve Coeur, Illinois. Merle Smith is the owner of the premises occupied by the tavern.

On October 22, 1971, Ronald Caruso went to the Riverside Inn, in Creve Coeur at about 8 o'clock in the morning and stayed there until about 6 o'clock in the evening. He drank from 20 to 40 12-ounce bottles of beer and when he left the Riverview Inn he was admittedly intoxicated. He went directly from the Riverview Inn to Jim's Place, arriving there sometime after 6 o'clock P.M. He was intoxicated when he arrived.

There was considerable testimony that he had something to drink while at Jim's Place. Robert Neavill said he saw Ronald at the bar drinking a beer; Jerry Fehr said that Ronald first ordered a 7 and 7, and also had a 6-ounce glass of mixed peppermint schnapps, bourbon and rum, and he also saw Ronald drink 4 or 5 bourbon and rum drinks. Jack Vanderheydt, the bartender at Jim's Place, stated that shortly after Ronald came in he ordered a beer and was told to help himself from a setup at the end of the bar, as it was free. He denied serving any mixed drinks to Ronald.

Donald Aeschilman said Ronald was drinking a beer. James Kazense, said he did not see Ronald have a drink, but there was beer all over the bar, he imagined that a beer in front of Ronald was Ronald's. There were 50 to 80 people there for a surprise party for Jim. Ronald testified that he had beer and mixed drinks and peppermint schnapps at Jim's Place. Nancy Britton testified that she saw Ronald drinking beer and she saw him leave with a couple of six-packs in a sack.

Ronald left Jim's Place at about 9 P.M. He was intoxicated when he left. Almost immediately after leaving he became involved in an accident. The police found a six-pack of beer in his truck after the accident.

Ronald Caruso had been steadily employed and had supported his wife and children. He suffered serious, permanent injuries as a result of the accident.

The plaintiffs contend:

1. That the trial court should have directed a verdict for plaintiffs and against defendants on the issue of liability.
2. That the verdict was against the weight of the evidence.
3. That the closing argument of defense counsel in referring to the absence of Melvin Russell (the operator of the Riverview Inn) as a defendant and arguing that it was Melvin Russell who was responsible, was improper.

Effective August 1, 1971, the Dram Shop Act was amended so that the provisions pertinent to issue now before us reads as follows:

"Every person who is injured in person or property by an intoxicated person, has a right of action in his own name, severally or jointly, against any person who by selling or giving alcoholic liquor, causes the intoxication of such person. \* \* \* An action shall lie for injuries to means of support \* \* \* in consequence of the intoxication, habitual or otherwise, of any person resulting as aforesaid." Ill. Rev. Stat. 1971, ch. 43, par. 135.

■■ This amendment removed the words, "in whole or in part" so that thereafter liability is to be imposed only upon the person who caused the intoxication rather than on any person who contributed to such condition. *Edenburn v. Riggins,* 13 Ill.App.3d 830.

■■ It is apparent that this most recent legislative change in the Act has limited the application of the Act which now only applies to those dram shops which "cause" the intoxication that results in injury. The phrase, "causes the intoxication" is not a technical legal term requiring definition. We note that IPI 150 *et seq.* (2d ed.) does not define the term. In the case at bar we believe that the question of whether the intoxication was the result of the serving of liquor by defendants was a question of fact for the jury.

■■ Further, in an "in consequence" case such as we have here the intoxication must be a direct and proximate cause of the loss. (*Danhof v. Osborne,* 11 Ill.2d 77.) The question as to whether the injury proximately resulted from the intoxication is usually one for the jury. (*Casey v. Burns,* 7 Ill.App.2d 316.) If the injury is caused by some means attributable directly to the intoxication and to no other cause, then only

can the court say as a matter of law that the intoxication caused the injury to means of support. The usual case presents a question of fact for the jury. (*Lester v. Bugni*, 316 Ill.App. 19; *Jones v. Keilbach*, 309 Ill.App. 233; *Taylor v. Hughes*, 17 Ill.App.2d 138.) In the instant case the only evidence as to the accident was testimony of Roy Wooding that he was driving in the right hand lane of a two-lane road, he saw a car stopped in the left-hand lane and he saw headlights (of Caruso) coming behind in the left-hand lane. As Caruso approached from behind he struck the auto stopped on the highway, cut across in front of Wooding, became airborne, and landed on top of some automobiles in a used-car lot. We believe the question of proximate cause herein to be a question of fact to be determined by the jury from consideration of all the evidence and that there was no error by the trial court in failing to direct a verdict for plaintiffs on the issue of liability.

We are not inclined to hold that the verdict herein was against the manifest weight of the evidence since without doubt Tony Caruso was intoxicated when he left the Riverside Inn and intoxicated when he arrived at defendant's tavern. It was for the jury to say whether the intoxication was caused by liquor served by defendants. The issue could have been decided either way by the jury. *Theesfeld v. Eilers*, 122 Ill. App.2d 97.

In the final argument of defense counsel the following statements were made: "It is applicable [Dram Shop Act] in this case to somebody but he is not here. * * * the wrong man is sitting at this table. There is an empty chair back there that should be filled by a man of the name of Russell who runs the Riverview Inn, because he is the man, and his employees and agents. They are the people who caused the intoxication of Mr. Caruso."

▮▮▮ The evidence at the trial, initiated by plaintiff, indicated that Caruso became intoxicated at the Riverview Inn. Defendants' theory of defense was to show that the responsibility for causing the intoxication rested elsewhere. The remarks made in *Hopwood v. Thomas Hoist Co.*, 71 Ill.App.2d 434, are in point. There the court said (pp. 443-4):

> "Admittedly facts were included in this argument which tended to place the blame for the accident on Sumner Sollit. But the closing argument was merely one based upon evidence in the record. These facts were presented to the jury during the trial, and consequently a repetition of these was not so improper as to deprive plaintiffs of a fair trial. The jury was entitled to draw inferences from these facts to the effect that Thomas Hoist was not negligent, and if anyone was negligent, it was Sumner Sollitt. * * * The purpose of a closing argument is to assist the jury

in arriving at a verdict, with all facts presented fairly. Consideraable latitude of expression on anything that is in evidence must be allowed counsel. It is within the function of an advocate to argue that the client is not liable, which was the real purport of the allegedly improper argument in the instant case.     *   *   * When arguing within the limits of admitted or uncontroverted facts, counsel should enjoy the greatest latitude consistent with decorum."

We conclude that the comments in question were not improper in this case. See *Dembinski v. F. & T. Corp.*, 124 Ill.App.2d 112.

For reasons stated the judgment of the Circuit Court of Tazewell County is affirmed.

Affirmed.

SCOTT, P. J., and ALLOY, J., concur.