JAMES M. KINGSTON *et al.*, Plaintiffs-Appellants, v. KATHLEEN R. TURNER, d/b/a New Moon Tavern *et al.*, Defendants-Appellees.

Fifth District No. 5—84—0487

Opinion filed May 22, 1985.—Rehearing denied June 25, 1985.

678

JONES, P.J., dissenting.

John Dale Stobbs, of Stobbs & Sinclair, of Alton, for appellants.

Francis J. Lynch, of Law Offices of Guy A. Studach, of Springfield, for appellees Kathleen R. Turner, Wayne S. Tenison, and Virginia I. Tenison.

Michael B. Constance, Edward J. Szewczyk, and Steven G. Bailey, all of Donovan, Hatch & Constance, P.C., of Belleville, for other appellees.

JUSTICE HARRISON delivered the opinion of the court:

On July 19, 1982, a motorcycle driven by John C. Berry struck the left side of a pickup truck driven by plaintiff Jim Kingston. Berry was killed in the accident, and plaintiff was injured. Subsequently, plaintiff and his wife, individually and as parents and next friends of their children, filed a complaint directed partly against defendants, owners of two taverns where Berry consumed alcoholic beverages prior to the accident. The count of the complaint directed against defendants sought recovery pursuant to article VI, section 14, of the Liquor Control Act (Ill. Rev. Stat. 1981, ch. 43, par. 135). A trial by jury resulted in a verdict for defendants, and the trial court entered judgment on the verdict. Plaintiffs appeal, raising several issues for our consideration. For the reasons which follow, we need only address plaintiffs' contention that the court erred in failing to give a jury instruction tendered by plaintiffs.

The evidence offered by plaintiffs tended to establish that Berry consumed beer at both the New Moon Tavern and MD's Tavern prior to the accident. David Scott testified that he was at both taverns with Berry, and that the beer consumed by Berry had "some effect" on Berry's disposition and behavior. Debra Dugan indicated that she was driving west along Route 140 in Bethalto, on the date of the accident, when a motorcycle came onto the highway from MD's Tavern, drove close to the rear of her car, and accelerated past her at a high rate of speed. The motorcycle continued along for a short distance and then struck the plaintiff's truck, which was attempting to cross the four lanes of Route 140. According to Ms. Dugan, plaintiff had

pulled out from a street on the right-hand side of the road, had crossed the first lane of traffic, and was positioned partly in the second lane of traffic and partly in a central lane provided for motorists wishing to turn left off of westbound Route 140 at the intersection where the accident occurred. Ms. Dugan, who was driving in the right-hand lane, testified that the motorcycle "had plenty of time *** to get back into my lane where he could have cleared the pickup truck," but that the motorcycle did not make this maneuver. Plaintiff James Kingston testified that he looked in both directions before proceeding into the intersection, and that he did not see the motorcycle until it was about 20 feet away from him. A toxicologist testified that a sample of vitreous fluid taken from Berry's eye after the accident revealed an ethanol concentration of .195, and, in the opinion of the toxicologist, this reading indicated that Berry was intoxicated at the time of his death. Defendants offered no evidence.

During the jury instruction conference, plaintiff tendered the following non-Illinois Pattern Jury (IPI), Civil, instruction:

> "The sales and consumption of alcoholic beverages at two or more dramshops may result, that is, cause a single intoxication. When I use the phrase 'caused the intoxication of John Clark Berry,' I mean the liquor consumed at a given dramshop is a material and substantial factor in causing the intoxication. This is a question of fact for you to determine."

The court refused to give this instruction. Subsequently, during its deliberations, the jury sent the court a note which referred to part of one of the jury instructions, and asked the following question:

> "3.) That the liquor thus consumed caused the intoxication of John Clark Berry.
>
> Does this question mean that one or both establishments is totally responsible for Berry's intoxication; or that one or both contributed to Berry's intoxication?"

In a discussion following receipt by the court of the note, plaintiff retendered the instruction quoted above, and the court again refused to give it. The jury resumed its deliberations without further instruction, and ultimately returned the following verdict and answers to special interrogatories:

> "Was John Clark Berry intoxicated at the time of the collision on July 19, 1982?
>
> Yes: __X__
> No: _____
>
> If yes, was such intoxication the result of consuming alcoholic beverages sold by (A) Kathleen Turner, d/b/a New Moon

Tavern or (B) Donald W. Emde, d/b/a MD's Tavern?
(A) Yes: _____ No: __X__
(B) Yes: _____ No: __X__
***

We, the Jury, find for all of the Defendants and against all of the Plaintiffs."

On appeal, plaintiffs assert that the court committed reversible error in not giving the requested instruction on the meaning of "cause." We agree. Article VI, section 14, of the Liquor Control Act (Ill. Rev. Stat. 1981, ch. 43, par. 135) provides, in pertinent part:

"Every person who is injured in person or property by any intoxicated person, has a right of action ***, severally or jointly, against any person who by selling or giving alcoholic liquor, causes the intoxication of such person. *** An action shall lie for injuries to means of support caused by an intoxicated person or in consequence of the intoxication ***."

In *Thompson v. Tranberg* (1977), 45 Ill. App. 3d 809, 360 N.E.2d 108, the court noted that, before this statute was amended in 1971, the reference in it to "causing the intoxication" included the phrase "in whole or in part." (45 Ill. App. 3d 809, 811.) The *Thompson* court went on to discuss the meaning of this amendment:

"The amendment basically establishes the requirement that there must be evidence that the charged dramshop has not merely furnished a negligible amount of intoxicating liquor but has in fact caused the intoxication. [Citation.]

It does not follow, however, that the legislature intended to limit recovery to a single defendant who causes the intoxication. The statute recognizes this by giving the right of action 'severally or jointly' against any person who causes the intoxication. (Ill. Rev. Stat. 1973, ch. 43, par. 135; see Comment, *The Illinois Dramshop Act: Effect of the 1971 Amendment,* 1974 U. Ill. L.F. 466, 472-73.) Moreover, the ordinary meaning of the word 'causes' as used in the statute does not exclude the possibility that two or more causes may join to result in a single intoxication. If the legislature had intended that liability be limited to the one dramshop which is most responsible for causing the intoxication, it would most likely have retained the alternative that intoxication may be caused 'in whole' rather than deleting it with the 'in part' alternative. Further [,] there is a general recognition in the law that causation giving rise to liability may be the result of two or more independent acts. [Citations.]" 45 Ill. App. 3d 809, 811-12.

When a jury raises an explicit question on a point of law relevant to the deliberation of the factual issues before it, it is the duty of the trial judge to attempt to clarify the question in the minds of the jury members. (*Gale v. Hoekstra* (1978), 59 Ill. App. 3d 400, 407, 375 N.E.2d 456.) Moreover, when the meaning of a word used in a statute has been judicially construed, an instruction reflecting this construction may appropriately be given. (*Cf. Perry v. Chicago & North Western Transportation Co.* (1977), 54 Ill. App. 3d 82, 90-91, 369 N.E.2d 155 (no error in refusing to give instruction regarding statute pertaining to railroad crossings, as instruction did not reflect judicial interpretation of words "safe" and "approaches" contained within statute).) Here, the word "causes," as used in the Liquor Control Act, was specifically construed in *Thompson v. Tranberg* to mean "whether the defendant's conduct was a material and substantial factor in producing or contributing to produce the intoxication." (*Thompson v. Tranberg* (1977), 45 Ill. App. 3d 809, 812.) The instruction tendered by plaintiff accurately incorporated this definition, and would have correctly answered the question posed by the jury. We therefore hold that the court erred in not giving the requested instruction.

Having concluded that the failure to give this instruction was error, we must also determine whether that error was of sufficient magnitude to warrant reversal. Upon careful consideration of the complete record, we are unable to say that the court's failure to give the instruction was harmless error. Unrebutted evidence established that Berry was intoxicated at the time of the accident, and that his mood was affected by the alcohol consumed at defendants' establishments. There is no evidence suggesting that Berry consumed liquor anywhere else, and Debra Dugan testified that Berry had more than ample time to turn back into the right-hand lane and avoid the accident. While defendants assert that plaintiff's conduct in driving across the road was the proximate cause of the accident, the intoxication resulting from the sale need not be the sole cause of the injuries (*Morgan v. Kirk Brothers, Inc.* (1982), 111 Ill. App. 3d 914, 920, 444 N.E.2d 504), or even the principal cause (see *Thompson v. Tranberg* (1977), 45 Ill. App. 3d 809, 812, 360 N.E.2d 108). In light of the substantial, uncontradicted evidence tending to show that Berry was intoxicated, that he consumed liquor at defendants' taverns, and that the intoxication at least partially caused the accident, we are compelled to conclude that the trial court's failure to instruct the jury as to the legal meaning of the word "cause" constitutes reversible error under the facts of this case.

For the foregoing reasons, the judgment of the circuit court of Madison County is reversed, and this cause is remanded for a new trial.

Reversed and remanded.

WELCH, J., concurs.

PRESIDING JUSTICE JONES, dissenting:

I respectfully dissent.

The instruction that the majority has held to have been erroneously refused by the trial court is intrinsically and fundamentally faulty. The fact that the instruction is not in Illinois Pattern Jury Instructions (IPI), Civil (2d ed. 1971) is the least of its shortcomings. Whether considered as a whole or sentence by sentence, it is ungrammatical, incongruous, confusing and uninstructive.

The first sentence of plaintiffs' instruction No. 14 appears to be a solecism, for it equates "cause" and "result." The second sentence is one of definition embedded in the middle of the instruction, and the phrase it defines does not appear elsewhere in the instruction. Definitional instructions ordinarily used in an IPI Civil series carry no further phraseology and generally recite "When I use the phrase _____ in these instructions ***." With further regard to the second sentence of the instruction, the phrase "consumed at a given dramshop" does not address the question of drinking at more than one dramshop. That phrase does not serve to answer the jury's question, but it does serve to obscure the fact that the jury could impose liability on just one of the dramshops. The third sentence of the instruction informs the jury, "This is a question of fact for you to determine." "This" is a pronoun that has no noun to refer to as an antecedent. Moreover, the first two sentences do not pose a question or any sort of proposition for an answer by the jury.

Upon consideration of the foregoing, it is little wonder that plaintiffs' instruction No. 14 was refused by the trial court. I would venture the opinion that no instruction in the phraseology of plaintiffs' instruction No. 14 will ever appear in IPI Civil, or gain acceptance as a non-IPI instruction.

Plaintiffs' purpose in tendering their instruction No. 14 was apparently to tell the jury that more than one dramshop could "cause" a person to become intoxicated and, therefore, be liable under the Act. The majority has adopted the plaintiffs' argument and the tendered instruction. I disagree with the felt necessity for such an in-

struction and with the reasoning leading to its adoption.

It was not an oversight that led the drafting committee of IPI Civil instructions to omit a definition of "causes the intoxication." Fourteen years have elapsed since the 1971 amendment to the Liquor Control Act that deleted the "in whole or in part" language. Cases and commentary following the amendment make it plain that the intent of the legislature in imposing dramshop liability upon those who "cause" intoxication was a considered policy decision and not the result of an inadvertent choice of words. The intent of the legislature was to constrict liability. The supreme court in *Nelson v. Araiza* (1978), 69 Ill. 2d 534, 540-41, 372 N.E.2d 637, 639, had this to say:

> "In 1971 the 'in whole or in part' language was eliminated. The current statute provides a right of action only against those who cause the intoxication. This, according to the appellate court decisions touching upon it, narrows the scope of liability. The defendant must have caused the intoxication and not merely have furnished a negligible amount of liquor."

And the appellate court in *Thompson v. Tranberg* (1977), 45 Ill. App. 3d 809, 812, 360 N.E.2d 108, 111, in a similar vein stated:

> "There had been a number of legal decisions under the prior act defining 'in whole or in part' strictly against a defendant with the result that proof of gift or sale of intoxicating liquor in any degree no matter how slight was sufficient. [Citations.] In some cases, however, it was recognized that the elements of the quantity of liquor consumed and the remoteness in time could support a denial of recovery. [Citations.] It seems fair to conclude that the intent of the legislature with respect to the 1971 amendment was to eliminate the possibility that dramshop liability could be founded on any consumption of alcohol no matter how slight but to impose liability only when intoxication could be said as a matter of fact to have been caused by a dramshop."

Also see *Caruso v. Kazense* (1974), 20 Ill. App. 3d 695, 313 N.E.2d 689; *The Illinois Dramshop Act: Effect of the 1971 Amendment*, 1974 U. Ill. L.F. 466, 472-73.

It is to be noted that the IPI Civil series of instructions relating to the trial of dramshop actions (IPI Civil 2d No. 150 *et seq.*) nowhere define the word "causes" or the phrase "causes the intoxication." This is neither an omission nor an oversight. The simple reason for omitting such a definition is that the word "causes" is a simple one with a meaning understood by all. The definition of the

word "cause" (when used in verb form, as it is in the Act) assigned by Webster's Third New International Dictionary is "to serve as cause or occasion of: bring into existence: make." This meaning is a commonly understood one and needs no elaboration. If a jury is told in an instruction that "cause" is defined as "conduct that was a material and substantial factor in producing or contributing to producing the intoxication," it will serve only to confuse and obfuscate that which they already understand. Such definition of "cause" will, furthermore, lead to a corruption of the statute and lead to a diversion from the fulfillment of the legislative purpose. While the term "material and substantial factor" may well serve a court of review in considering the weight to be accorded a jury's finding, it certainly will be of no aid to a jury in determining whether a particular dramshop "caused" an intoxication. In this regard, it is to be noted that the *Thompson* case, relied upon by the majority, was not concerned with the propriety of a jury instruction.

The court in *Caruso v. Kazense* states: "The phrase, 'causes the intoxication' is not a technical legal term requiring definition. We note that IPI 150 *et seq.* (2d ed.) does not define the term." (20 Ill. App. 3d 695, 697, 313 N.E.2d 689, 691.) In *Thompson v. Tranberg* (1977), 45 Ill. App. 3d 809, 360 N.E.2d 108, the court stated: "Moreover, the ordinary meaning of the word 'causes' as used in the statute does not exclude the possibility that two or more causes may join to result in a single intoxication." (45 Ill. App. 3d 809, 812, 360 N.E.2d 108, 111.) In the instant case the jury was thoroughly instructed on the possibility that either or both defendant dramshops could be found liable under the Act if they had "caused" the intoxication of Berry. Plaintiffs' instruction No. 9 set forth the dramshop statute and advised the jury that *any* person who causes the intoxication could be liable. Plaintiffs' instruction No. 15 set forth the statute that imposes liability under the Act upon *any* owner that knowingly permits the sale of alcoholic liquors that causes an intoxication. Most pointedly, plaintiffs' instruction No. 8, in setting out plaintiffs' burden of proof, advised the jury that the plaintiffs had the burden of proving that "the defendants, or one of them, their agents or servants, sold or gave intoxicating liquor consumed by John Clark Berry; that the liquor thus consumed caused the intoxication of John Clark Berry." This language was then repeated two times as the instruction continued for the two additional counts of the complaint. Three verdict forms were submitted to the jury. One, plaintiffs' instruction No. 26, was for use in finding for the plaintiffs and against *all* defendants. Another, plaintiffs' instruction No. 27, was for use in

finding for plaintiffs and against "the following defendants _____." The third was for use in finding for *all* the defendants.

In addition to the wording of the instructions, plaintiffs' attorney repeatedly told the jury in his closing argument that both defendant dramshops could and should be found liable as having caused Berry's intoxication. In the first phase of his final argument to the jury, plaintiffs' attorney stated:

> "Well, I think that the question of where he became intoxicated, where, which of the quantities of alcohol that he consumed on this evening in question, did he become intoxicated as a result of what he drank at the New Moon or because of what he drank, the last bit that he had over there at MD's Tavern.
>
> I think he got the alcoholic beverage that intoxicated him in both places."

Again, in the final, or reply, phase of his closing argument, plaintiffs' attorney stated:

> "I am glad you have been encouraged to use your common sense because I think anybody who is using their common sense would know that not only did this occur and that a factor in the occurrence was the intoxication of this man, but that really he got intoxicated at both places. He consumed the alcohol at both places. It is like taking a glass and you fill it up with water, and another guy comes along and he fills it a little bit more full; and pretty soon it goes over the brim. Who makes it go over the brim?
>
> They both make it go over the brim."

In addition to the two quoted remarks, there are at least four additional instances in which plaintiffs' attorney told the jury that both defendant dramshops caused the intoxication of Berry. In view of the instances in the instructions and the arguments in which the jury was told that both defendants could be held liable under the Act, they could not have been confused upon that issue, and there was no occasion to give plaintiffs' instruction No. 14, as the trial court fully realized.

I conclude with the observation that the jury answered a special interrogatory by finding that John Clark Berry *was* intoxicated but that such intoxication was not the result of consuming alcoholic beverages at either of the defendant dramshops. Both findings are well supported by the evidence. Moreover, in reading the entire transcript, one is persuaded that the jury concluded from the evidence

that plaintiffs' injury was not brought about by the intoxicated person, Berry. Rather, it resulted from his pulling from a side street and stop sign into the path of oncoming traffic. This conclusion, too, is well within the realm of the evidence.

I would affirm.