(Nos. 62208, 62210 cons.—

JAMES M. KINGSTON *et al.*, Appellees, v. KATH-LEEN R. TURNER *et al.*, Appellants.

*Opinion filed February 20, 1987.—Rehearing denied March 30, 1987.*

448

SIMON, J., dissenting.

Francis J. Lynch, of Studach and Lynch, of Springfield, for appellants Kathleen R. Turner *et al.*

Michael B. Constance, Edward J. Szewczyk and Steven G. Bailey, of Donovan, Hatch & Constance, P.C., of Belleville, for appellants Donald W. Emde *et al.*

John Dale Stobbs, James S. Sinclair and Jean T. Gouy, of Stobbs & Sinclair, of Alton, for appellees.

JUSTICE RYAN delivered the opinion of the court:

Plaintiffs, James Kingston and his wife, individually and as parents and next friends of their two minor children, brought suit in the circuit court of Madison County seeking recovery for injuries sustained as a result of an accident on July 19, 1982, involving vehicles driven by James Kingston and John Clark Berry. Named as defendants were the owner/operators of two taverns where Berry consumed alcoholic beverages prior to the accident and the owners of the tavern premises. Recovery was sought pursuant to article VI, section 14, of "An Act relating to alcoholic liquors," 1934, as amended (the Liquor Control Act or the Act) (Ill. Rev. Stat. 1981, ch. 43, par. 135). A jury trial resulted in a verdict for defendants. A divided appellate court found that the trial

court committed reversible error when it refused to give a jury instruction tendered by plaintiffs and remanded the cause for a new trial. (133 Ill. App. 3d 677.) We granted defendants' petition for leave to appeal.

John Clark Berry arrived at the New Moon Tavern in Cottage Hills, Illinois, between 4:45 and 5 p.m. on the afternoon of July 19, 1982. He remained at the tavern with two acquaintances, Kenneth Thaller and David Scott, for approximately 1½ hours. Scott testified that during this time, while he played pool, Berry and Thaller consumed one, possibly two, half-gallon pitchers of beer. According to Scott, at about 6:15 p.m., Berry and Thaller told him that they were going to a local restaurant for a hamburger. Scott told the two men that he would join them after he finished playing pool, and Berry and Thaller left the New Moon Tavern. Both men rode to the restaurant on Berry's motorcycle.

Between 6:15 and 6:45 p.m., the three men met at the restaurant and found it closed. Scott testified that Berry then suggested they go on to MD's Tavern in Bethalto, Illinois. The three men arrived at this tavern at approximately 7 p.m. and stayed for one hour. Evidence revealed that during this period Berry ate a large hamburger and consumed one 12-ounce schooner of beer. Scott testified that when the three men left MD's Tavern Berry was in a "jovial" mood. He also testified that, in his opinion, the alcohol Berry had consumed was having some effect on his disposition and behavior. When the three men left the tavern, Thaller again rode with Berry on his motorcycle.

Sometime between 8 and 8:15 p.m., James Kingston, while driving in a southerly direction, attempted to turn his pickup truck left into the eastbound lanes of Illinois Route 140 from North Lincoln Street in Bethalto. Kingston stopped to let a vehicle pass from his right and then proceeded into the intersection. While his vehicle was

still in the second westbound lane, Kingston turned and saw Berry's motorcycle only 20 feet away. The motorcycle which was westbound on Route 140 struck Kingston's pickup truck on the left door. Berry was killed in the accident, and Thaller and Kingston were seriously injured.

As noted above, James Kingston and his wife, Rickey, as individuals and as parents and next friends of their two minor children, subsequently filed a complaint in the circuit court of Madison County containing counts against Kathleen Turner as the owner/operator of the New Moon Tavern, against Wayne and Virginia Tenison as owners of the New Moon's premises, against Donald Emde as the owner/operator of MD's Tavern, and against John Augustine, Jr., as owner of the premises of MD's Tavern. Plaintiffs sought recovery for James Kingston's personal injuries and property damage and for injuries to the means of support of his wife and the Kingston's two minor children pursuant to article VI, section 14, of the Act (Ill. Rev. Stat. 1981, ch. 43, par. 135). The statute imposes liability for such damages, when caused by an intoxicated person, on those whose sale or gift of alcohol "causes the intoxication." (Ill. Rev. Stat. 1981, ch. 43, par. 135.) Recovery was also sought for Rickey Kingston's payment of her husband's medical bills under the family-expense statute (Ill. Rev. Stat. 1981, ch. 40, par. 1015).

During *voir dire*, plaintiffs' counsel asked the first panel of four prospective jurors whether any of them had relatives or friends who were associated with other taverns. Plaintiffs' counsel did not repeat this question to all the members of the second panel of four jurors. However, the court did inquire whether any of the questions asked of the other prospective jurors would create any problems in their hearing the case. After plaintiffs tendered the second panel it was discovered that one ju-

ror's father had owned a tavern for a number of years. After the panel had been accepted by both parties, plaintiffs' counsel requested permission to question this juror further, urging that the information was material to the effective exercise of any peremptory challenge. The trial court stated that the panel could not be broken once it was accepted and refused plaintiffs' request. At that point another accepted juror revealed that his father had been a bartender for 20 years. These two jurors remained impaneled for the trial.

At trial, Debra Dugan, an eyewitness to the accident, testified that she had observed Berry and Thaller from the time they left the parking lot at MD's Tavern, and that Berry had been driving his motorcycle erratically. Dugan recalled that as Kingston's truck cleared the first westbound lane in the intersection, Berry pulled into the second westbound lane to pass her automobile. Dugan stated that in her opinion Berry was speeding and that he had ample time to return to the first lane and avoid striking Kingston's truck. Another witness, Shawn Norman, who was driving east on Illinois 140, also testified that Berry was speeding at the time of the accident. Norman further stated that, as the motorcycle passed the Dugan automobile, Berry was looking back, talking to his passenger. Dr. John Spikes, the chief toxicologist for the Illinois Department of Public Health, testified that a sample of vitreous fluid taken from Berry's eye after the accident revealed an ethanol content of .195, and that in his opinion this level indicated that Berry was intoxicated at the time of his death.

During the conference on jury instructions, plaintiffs tendered an instruction purporting to define the term "cause the intoxication" as used in article VI, section 14, of the Act. The instruction is not contained in Illinois Pattern Jury Instructions (IPI), Civil (2d ed. 1971); it reads:

"The sales and consumption of alcoholic beverages at two or more dram shops may result, that is, cause a single intoxication. When I use the phrase 'cause the intoxication of JOHN CLARK BERRY', I mean 'the liquor consumed at a given dram shop is a material and substantial factor in causing the intoxication.' This is a question of fact for you to determine."

Both sets of defendants objected to this instruction on the grounds that the first sentence was contrary to the provisions of the statute. After hearing arguments on this objection, the trial court refused to give the instruction.

During its subsequent deliberations, the jury sent a note to the court regarding the instructions that were given:

"3.) That the liquor thus consumed caused the intoxication of John Clark Berry.

Does this question mean that one or both establishments is totally responsible for Berry's intoxication; or that one or both contributed to Berry's intoxication?"

In response to this inquiry, plaintiffs again tendered the jury instruction quoted above. Defendants maintained that the jury had been adequately instructed, and the trial court again refused it. The jury was informed that there would be no further instructions from the court.

Ultimately, the jury returned a general verdict in favor of all defendants and against the plaintiffs. The jury also answered special interrogatories by finding that Berry was intoxicated at the time of the collision but that his intoxication was not the result of consuming alcoholic beverages at either tavern. Judgment was entered on the verdict, and plaintiffs appealed.

As noted above, a divided appellate court reversed the trial court's decision and remanded the cause for a new trial. (133 Ill. App. 3d 677.) The appellate court stated that it was the duty of a trial judge to attempt to

clarify explicit questions regarding relevant points of law raised by a jury during its deliberations. (133 Ill. App. 3d 677, 681.) The court also stated that "when the meaning of a word used in a statute has been judicially construed, an instruction reflecting this construction may appropriately be given. [Citation.]" (133 Ill. App. 3d 677, 681.) The court then noted that the word "causes," as used in the Act, had been specifically construed in *Thompson v. Tranberg* (1977), 45 Ill. App. 3d 809, and that plaintiffs' instruction accurately incorporated the language of that case. The majority also noted that plaintiffs' instruction would have answered the specific question posed by the jury. (133 Ill. App. 3d 677, 681.) The appellate majority found that the trial court's refusal to give the instruction in response to the jury's inquiry constituted reversible error. 133 Ill. App. 3d 677, 681.

The dissent expressed the opinion that plaintiffs' instruction was "ungrammatical, incongruous, confusing and uninstructive." (133 Ill. App. 3d 677, 682 (Jones, P.J., dissenting).) It also stated that the instruction was contrary to the purpose and intent of the 1971 amendment to the Act and should not have been given for that reason. (133 Ill. App. 3d 677, 682-83 (Jones, P.J., dissenting).) Finally, the dissent noted that the jury could have concluded that plaintiffs' injuries resulted from James Kingston's act of "pulling from a side street and stop sign into the path of oncoming traffic." 133 Ill. App. 3d 677, 686 (Jones, P.J., dissenting).

Plaintiffs argue that under our Rule 239(b) (87 Ill. 2d R. 239(b)) the only objection to the jury instruction quoted above which defendants may raise in this appeal is the one specifically made during the instruction conference. We disagree.

This court has previously stated that if a trial court's refusal of a tendered instruction is correct, on any ground, it will stand even though based upon an incor-

rect reason. (*Pioneer Hi-Bred Corn Co. v. Northern Illinois Gas Co.* (1975), 61 Ill. 2d 6, 13.) Thus, we may examine all of the specific objections to this instruction raised in the defendants' brief. To hold otherwise would lead to the absurd practice of requiring a party to continue to catalogue its objections to proposed jury instructions after the trial court has already sustained one or more of them.

We consider first the objection sustained by the trial court, that the proposed instruction was contrary to provisions of article VI, section 14, of the Liquor Control Act (Ill. Rev. Stat. 1981, ch. 43, par. 135). The first sentence of the instruction read as follows: "The sales and consumption of alcoholic beverages at two or more dram shops may *result, that is, cause* a single intoxication." (Emphasis added.) Plaintiffs maintain that this sentence merely informed the jury that recovery under the statute was not limited to a single defendant. If this were the extent of this portion of the instruction, we would agree that it represented an accurate statement of the law, based upon the decision in *Thompson v. Tranberg* (1977), 45 Ill. App. 3d 809. However, plaintiffs' argument misses both the essence of defendants' objection and the flaw contained in the first sentence of the instruction.

Prior to its amendment in 1971, the Act provided that every person who is injured in person or property by an intoxicated person has a right of action against any person who, by selling or giving alcoholic liquor, "causes the intoxication, *in whole or in part,* of such person." (Emphasis added.) (Ill. Rev. Stat. 1969, ch. 43, par. 135.) Under this provision recovery could be founded merely on a showing of the resultant intoxication and the consumption of some liquor in defendant's tavern. (See Comment, *The Illinois Dram Shop Act: The Effect of the 1971 Amendment,* 74 U. Ill. L.F. 466, 469 (1974).) The essential element of a plaintiff's case was

that injury had been sustained in consequence of the intoxication of another and that the alcoholic liquors served by the defendant dramshop "contributed in some degree, no matter how slight," to the intoxication. *Osborn v. Leuffgen* (1942), 381 Ill. 295, 298.

The 1971 amendment to article VI, section 14, eliminated the "in whole or in part" language from the statute. (See Ill. Rev. Stat. 1983, ch. 43, par. 135.) While the amendment was not designed to alter the "legislative intent to place the responsibility for damages occasioned by the use of alcohol on those who profit from its sale" (Comment, *The Illinois Dram Shop Act: The Effect of the 1971 Amendment*, 74 U. Ill. L.F. 466, 477 (1974)), it was intended to limit liability and curb the wide-spread abuse occurring under this provision (see Comment, *The Illinois Dram Shop Act: The Effect of the 1971 Amendment*, 74 U. Ill. L.F. 466, 470 (1974)). This narrowing of liability was accomplished by shifting the emphasis away from the results of the consumption of alcoholic liquors. Recovery may now only be sought against any person who, "by selling or giving alcoholic liquor, *causes the intoxication.*" (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 43, par. 135.) Under the amended provisions, a defendant must have caused the intoxication and must not merely have furnished a negligible amount of liquor. (*Nelson v. Araiza* (1978), 69 Ill. 2d 534, 540-41.) The owner of the dramshop premises may be liable, jointly or severally, with the person selling or giving the alcoholic liquor which causes the intoxication. Ill. Rev. Stat. 1983, ch. 43, par. 135.

The first sentence of plaintiffs' tendered instruction is improper because it equates the terms "result" and "cause." Under one possible interpretation of this instruction, a jury might direct the focus of its deliberations towards the ultimate result of the consumption of alcoholic liquor. Based on such a misunderstanding, a

jury could, as happened prior to the statute's amendment, impose liability upon a tavern for a *de minimis* contribution to a party's intoxication. (See *Osborn v. Leuffgen* (1942), 381 Ill. 295, 298.) Even plaintiffs admit in their brief that under the present provisions of the Liquor Control Act such a sale or gift is no longer a sufficient basis for liability. In effect, the first sentence of the instruction could repeal the 1971 amendment to the statute by lessening the burden of proof it imposed upon a plaintiff. At the very least, it creates confusion and uncertainty as to the effect of the 1971 amendment. For reasons discussed below, the second sentence of plaintiff's proposed instruction does not correct this flaw.

Even if we accept plaintiffs' position that the first sentence of this instruction was intended only to inform the jury that more than one dramshop may cause a given intoxication, we would still find it improper. Illinois courts have consistently held that needless repetition in jury instructions should be avoided. *Ostendorf v. Brewer* (1977), 51 Ill. App. 3d 1009, 1014; *Herglund v. New York, Chicago & St. Louis R.R. Co.* (1971), 1 Ill. App. 3d 968, 978; *Randal v. Deka* (1956), 10 Ill. App. 2d 10, 16.

In this case, several other instructions informed the jury that more than one of the defendants could be held liable. For example, plaintiffs' instruction No. 8, which set forth the burden of proof, informed the jury that plaintiffs could recover if "the defendants, or one of them," caused Berry's intoxication. This language was repeated for each of the three counts involved. The verdict forms that were submitted in this action also informed the jurors that they could find against all the defendants or only some of them. The first sentence of the refused instruction was unnecessary and would have constituted needless repetition of this legal principle.

The second sentence of plaintiffs' proposed instruc-

tion stated that "cause the intoxication" meant that "the liquor consumed at a given dram shop is a material and substantial factor in causing the intoxication." Defendants argue that this second sentence was also fatally flawed. They first contend that the appellate court erred in finding that the word "causes" was a proper subject for further definition within a jury instruction.

This court has previously stated that "the meaning of words, used in their conventional sense, need not be defined or explained in giving instructions to the jury" because instructions which attempt to define for the jury a phrase "of common usage and understanding *** can only lead to confusion and error." *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 323; see also *Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 388.

A prior appellate court decision involving the amended provisions of article VI, section 14, of the Liquor Control Act (Ill. Rev. Stat. 1983, ch. 43, par. 135) specifically stated that "[t]he phrase, 'causes the intoxication' is not a technical legal term requiring definition." (*Caruso v. Kazense* (1974), 20 Ill. App. 3d 695, 697.) Furthermore, the court in *Thompson v. Tranberg* (1977), 45 Ill. App. 3d 809, itself relied on "the ordinary meaning of the word 'causes' as used in the statute" to determine that recovery could be obtained from more than one dramshop. 45 Ill. App. 3d 809, 812.

Taking these decisions into account, we agree with the view expressed in Justice Jones' dissent that the absence of an instruction defining "causes" in the IPI Civil series "is neither an omission nor an oversight. The simple reason for omitting such a definition is that the word *** is a simple one with a meaning understood by all." (133 Ill. App. 3d 677, 683 (Jones, P.J., dissenting).) If a further attempt were made to define the term for the jurors, it would "serve only to confuse and obfuscate that which they already understand." (133 Ill. App. 3d 677,

684 (Jones, P.J., dissenting).) Therefore, the trial court did not need to provide the jury with plaintiffs' definition, and the refusal of this instruction was proper.

Plaintiffs acknowledge that the language of the second sentence of their proposed instruction was taken from the decision of the appellate court in *Thompson v. Tranberg* (1977), 45 Ill. App. 3d 809. Defendants contend, however, that even if the word "causes" is the proper subject of a definitional instruction, the second sentence of plaintiffs' proposed instruction was improper because it incorporated language from this prior opinion.

While "[a]n instruction is not erroneous merely because it paraphrases language of a prior opinion" (*Noncek v. Ram Tool Corp.* (1970), 129 Ill. App. 2d 320, 329), it is generally held that "[t]he practice of lifting sentences from court opinions and converting them into instructions *** is not a good one, as it often leads to serious error. [Citations.]" (*De Rosa v. Albert F. Amling Co.* (1980), 84 Ill. App. 3d 64, 76; see also *Strom v. Lipschultz* (1972), 5 Ill. App. 3d 308; *Spiezio v. Commonwealth Edison Co.* (1968), 91 Ill. App. 2d 392.) "Within the context of a particular case, the principles announced by the court may be either too broadly or too narrowly stated to provide that neutrality or generality of principle appropriate to jury instruction." *Noncek v. Ram Tool Corp.* (1970), 129 Ill. App. 2d 320, 329; see also *Dursch v. Fair* (1965), 61 Ill. App. 2d 273, 287-88.

In this action, the principle taken from *Thompson* and converted into the second sentence of plaintiffs' proposed instruction is too narrowly stated to provide effective guidance to a jury. As noted above, "causes" has a commonly understood meaning familiar to any jurors. The language lifted from *Thompson*—"a material and substantial factor"—is used in the disputed instruction to modify "in causing," thereby inserting into the meaning of the statutory language "causes the intoxication" the

limiting and qualifying elements of "a material and substantial factor." The court in *Thompson* did not use these qualifying words in relation to the statutory language "causes the intoxication." The language of *Thompson* was "whether the defendant's conduct was a material and substantial factor *in producing or contributing to produce the intoxication*." (Emphasis added.) (*Thompson v. Tranberg* (1977), 45 Ill. App. 3d 809, 812.) This language was used by the court in explaining the difference between liability under the Act after the 1971 amendment and before. In the concluding sentence of the paragraph which contains the words in question, the court summarized this discussion as follows: "It seems fair to conclude that the intent of the legislature with respect to the 1971 amendment was to eliminate the possibility that dramshop liability could be founded on any consumption of alcohol no matter how slight but to impose liability only when intoxication could be said as a matter of fact to have been caused by a dramshop." *Thompson v. Tranberg* (1977), 45 Ill. App. 3d 809, 812.

As set forth above, the *Thompson* opinion referred to conduct "producing or contributing to produce the intoxication." Plaintiffs' instruction ignores this language of *Thompson* and refers instead to conduct "causing the intoxication." Thus, plaintiffs have attempted to set forth a modification of the meaning of "causes" by lifting language from a sentence in *Thompson* used in a different context. We agree that such a use of the *Thompson* language is clearly "confusing and uninstructive" (133 Ill. App. 3d 677, 682 (Jones, P.J., dissenting)) and is unnecessary.

In holding that the language of the *Thompson* case could properly be included in a jury instruction, the appellate majority relied on the decision in *Perry v. Chicago & North Western Transportation Co.* (1977), 54 Ill. App. 3d 82. This reliance was misplaced.

In *Perry*, the court stated that "[i]f judicial interpretation has modified the language of a statute \*\*\*, such modification must be reflected in the instruction. [Citations.]" (54 Ill. App. 3d 82, 90-91.) The statute involved in *Perry* had been the subject of a prior court decision and the word "safe" had been construed as meaning "reasonably safe." (See *McElligott v. Illinois Central R.R. Co.* (1967), 37 Ill. 2d 459, 464.) The effect of this interpretation was that the commonly understood meaning of the word "safe," which would have made a defendant an insurer against all injury under the statute, no longer applied. 37 Ill. 2d 459, 464.

In *Thompson* there was no similar modification of the word "causes." In *Caruso v. Kazense* (1974), 20 Ill. App. 3d 695, 697, as noted above, the appellate court had held that "causes the intoxication" is not a technical legal term requiring definition. There is nothing in *Thompson* indicative of an intent to change the wording of *Caruso*. In fact, as noted above, the court in *Thompson* also relied upon "the ordinary meaning of the word 'causes' as used in the statute" as did *Caruso* to conclude "that two or more causes may join to result in a single intoxication." (*Thompson v. Tranberg* (1977), 45 Ill. App. 3d 809, 812.) Therefore, the trial court did not err in refusing to give the plaintiff's tendered instruction. That the *Thompson* court did not intend to change the law as stated in *Caruso* is evident from the fact that *Thompson* cites *Caruso* for the conclusion that "[t]he trier of fact determines whether the particular defendant did, in fact, cause the intoxication, subject of course to review as to the sufficiency of the evidence to establish the cause in fact. [Citations.]" 45 Ill. App. 3d 809, 813.

Defendants argue that even if plaintiffs' instruction was proper, the appellate court erred by imposing on the trial court a duty to answer all explicit questions regarding relevant points of law posed by a jury during its de-

liberation. We agree.

In a civil case, it is within the sound discretion of the trial court to allow or refuse a jury's request for clarification of instructions. (*Hunter v. Smallwood* (1975), 28 Ill. App. 3d 386, 390.) Having correctly instructed the jury, it is not error for the trial judge to leave standing the original instructions. (See *Stambaugh v. International Harvester Co.* (1982), 106 Ill. App. 3d 1, 23-24.) However, the trial court's discretion gives way to a duty to respond where the original instructions are incomplete and the jurors are clearly confused. *Hunter v. Smallwood* (1975), 28 Ill. App. 3d 386, 390; see also *People v. Gathings* (1981), 99 Ill. App. 3d 1135.

Having examined the record in this action, we cannot say that the original instructions were incomplete. As we discussed above, several other instructions informed the jury that either one or both of the defendants could be held liable under article VI, section 14, of the Liquor Control Act (Ill. Rev. Stat. 1983, ch. 43, par. 135). In addition, as we have held, the term "causes the intoxication" was one of common understanding and no further definition would have been proper.

Nor are we prepared to say that this jury was clearly confused. If the asking of a question alone were enough to show such confusion on the part of a jury, then trial courts would have no discretion but would be obligated to answer all relevant questions posed by a jury during its deliberations. Furthermore, the record indicates that the judge's response eliminated any confusion the jury may have experienced. The bailiff reported to the judge that when the jurors were informed that there would be no further instructions, "they *** said, 'Okay. That answers our question.' "

In its answers to special interrogatories, this jury found that John Berry was intoxicated at the time of the accident but that neither tavern caused his intoxication.

We recognize that at first glance these answers may be difficult to reconcile. However, it must be remembered that the only clear evidence as to the amount of alcoholic liquor that Berry consumed was the admission that he drank one 12-ounce beer at MD's Tavern. The evidence regarding his consumption at the New Moon Tavern was much less concrete. David Scott testified that perhaps two half-gallon pitchers of beer were purchased and that Thaller and Berry were the only ones who drank from them. The jury could infer from this evidence that Berry consumed one full pitcher of beer. They could, of course, also infer that he drank as much as a gallon or as little as a portion of a single glass. It is the function of the jury to weigh these contradictory inferences and draw an ultimate conclusion as to the facts. (*Tennant v. Peoria & Pekin Union Ry. Co.* (1944), 321 U.S. 29, 35, 88 L. Ed. 520, 525, 64 S. Ct. 409, 412; *Finley v. New York Central R.R. Co.* (1960), 19 Ill. 2d 428, 436.) No question has been raised in this court as to whether the evidence was sufficient to support the verdict and the special findings.

Finally, plaintiffs maintain that regardless of whether their instruction was properly refused, this cause must be remanded for a new trial due to the court's failure to reopen *voir dire* upon discovery of the potential bias of the two jurors whose fathers were associated with other dramshops. We do not agree.

The purpose of *voir dire* is to assure the selection of an impartial panel of jurors who are free from bias or prejudice. (*Moore v. Edmonds* (1943), 384 Ill. 535, 541; *People v. Teague* (1982), 108 Ill. App. 3d 891, 894.) Under our Supreme Court Rule 234 (103 Ill. 2d R. 234) the primary responsibility for initiating and conducting the *voir dire* examination lies with the trial judge (*People v. Teague* (1982), 108 Ill. App. 3d 891, 894), and the scope and extent of the exam rests within his discretion (*Peo-*

*ple v. Pitts* (1982), 104 Ill. App. 3d 451, 457). An abuse of this discretion will be found only if, after reviewing the record, it is determined that the judge's conduct thwarted the selection of an impartial jury. *People v. Teague* (1982), 108 Ill. App. 3d 891, 894.

In addition, under Rule 234 (103 Ill. 2d R. 234), the trial court may permit the parties to supplement its examination. Counsel for each party must then use diligence in examining jurors and exercising any challenges to protect the client against prejudice. (*Moore v. Edmonds* (1943), 384 Ill. 535, 542; *Kavanaugh v. Parret* (1942), 379 Ill. 273, 277.) The failure to challenge a juror for cause or exercise a peremptory challenge waives any objection to that juror. *People v. Ford* (1960), 19 Ill. 2d 466, 475; *People v. Tribett* (1981), 98 Ill. App. 3d 663, 678.

A review of the record shows that the trial judge in this action did not abuse his discretion in the conduct of the *voir dire* examination. There were no limitations placed upon the scope or extent of the original examination of each juror. Each party was allowed to freely question all of the prospective jurors. Indeed, the failure to disclose the relationship between these two jurors and the tavern business appears to be a case of trial counsel failing to explore the subject in depth in the questioning of prospective jurors. Plaintiffs' counsel asked many of the prospective jurors whether they had relatives who were associated with dramshops; he simply failed to consistently make this inquiry of all the prospective jurors, including the two in question. Having failed to do so, any potential objections there may have been to the two jurors in question were waived when the panel was tendered.

The cases cited by plaintiffs as requiring the reexamination of prospective jurors whenever information showing their possible bias is brought to the attention of the

trial court are distinguishable.

In *People v. Peterson* (1973), 15 Ill. App. 3d 110, after being sworn, a juror openly indicated to defense counsel that she hoped the defendants would plead guilty so she could go home. The court found that "the remark itself vitiates any previous conclusion made as to impartiality." (15 Ill. App. 3d 110, 111.) The information from the two jurors in this action indicated only that their fathers were associated with other dramshops. This information does not directly indicate the existence of a bias as did the information revealed in *Peterson.* Therefore, the remarks themselves do not vitiate the earlier conclusions of both parties and the court that these jurors could indeed be impartial.

The cases of *People v. Mitchell* (1984), 121 Ill. App. 3d 193, *People v. Oliver* (1977), 50 Ill. App. 3d 665, and *People v. Robwedder* (1969), 106 Ill. App. 2d 1, all involved jurors who incorrectly answered specific questions regarding their relevant past experiences or their knowledge of the parties and issues in the case. In the instant cause of action, neither juror was asked a specific question to which it can be said he responded incorrectly. Both indicated that they could be fair, and no indication to the contrary exists in the record.

In *People v. Gaston* (1984), 125 Ill. App. 3d 7, the court did state that "neither a trial judge's inadvertent omissions nor a juror's failure to divulge possibly pertinent information nor a trial attorney's laxness" can be allowed to impair the fundamental right to trial by a fair and impartial jury. (125 Ill. App. 3d 7, 11.) However, *Gaston* involved a criminal prosecution in which a prospective juror failed to voluntarily disclose that he was a part-time police officer when asked about his occupation. The court noted that the juror's failure to disclose the information where it would have been natural to do so raised a question as to his motivation. (125 Ill. App. 3d

7, 11.) In the present action, neither juror was personally associated with any tavern. The information they failed to disclose was not as personal or as closely related to the issues as that withheld in *Gaston*. It cannot be said that it would have been natural for these jurors to have volunteered this remote information; therefore, we cannot say that their failure to do so raises questions as to their motivation.

We note also that "[j]urors need not be totally ignorant of the facts and issues involved. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. [Citation.]" (*People v. Williams* (1968), 40 Ill. 2d 522, 531-32.) Both of these jurors were asked whether they could be fair to all of the parties and consider only the evidence presented during the trial. Both indicated that they could, and they were accepted by all the parties and the court.

If plaintiffs' argument were to be accepted and a new trial of this cause ordered, it would place a duty upon prospective jurors to volunteer information regarding any relevant biases, prejudices, or interests they might possess even when it would not be natural to do so. This in turn would place an undue burden upon them of knowing which prejudices, biases, and interests were relevant to a given cause of action. We decline to impose such a burden.

For the reasons stated above, the judgment of the appellate court in this action is reversed, and the judgment of the circuit court of Madison County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE SIMON, dissenting:

Whatever is said about the instruction proposed by the plaintiffs, it cannot be doubted that the jury was

confused by the instructions it did receive. The record showed that John Clark Berry was drinking at both taverns in the hours preceding the accident, and that he was intoxicated at the time of his death. The jury found that he was intoxicated, but somehow concluded that neither tavern "caused" the intoxication. The majority candidly admits that these findings are "difficult to reconcile" (115 Ill. 2d at 464), but nonetheless steadfastly refuses to come to grips with the contradiction. Since there was no evidence that Berry had been drinking elsewhere, one or both of the taverns must have "caused" his intoxication, no matter how causation is defined.

This is an unusual case because the jury's confusion over the causation issue was manifested not just by the contradictory answers to the special interrogatories, but also by its own inquiry of the trial judge. The jury wanted to know whether liability was proved only if "one or both establishments is totally responsible for Berry's intoxication [,] or [if] one or both contributed to Berry's intoxication." The question is, in itself, illogical because both taverns could not be "totally responsible" and thus demonstrates the jury's confusion. The question also makes clear that the jury had stalled on the key question of what is meant by "causes the intoxication."

The majority takes solace in the fact that after the jurors were told that they had all the necessary instructions, someone said to the bailiff, "Okay. That answers our question." But this response sheds no light on the matter. If all the members of the jury had thought they had sufficient information, they would not have posed the question in the first place. Taken together with the finding that neither tavern caused the intoxication, the statement reported by the bailiff leads me to believe that, if anything, at least one juror hit on the wrong answer: that liability would only attach to a tavern "totally

responsible" for the intoxication.

My colleagues believe that the term "causes" is "one of common understanding" (115 Ill. 2d at 463) and "is not a technical legal term requiring definition" (115 Ill. 2d at 462). This comes as a surprise to me, as I think it will to virtually every other lawyer or law student who has struggled with the concept of causation. The mere fact that a word is used in common speech does not make its use in a court of law obvious; for example, the fact that laymen may use the word "murder" in common parlance would not justify a judge's refusal to explain its legal contours to a jury sitting in a murder trial.

Causation is a difficult legal concept to pin down. The jury was permitted here, though, to roam at will, without meaningful direction, and apparently to conclude that only a dramshop "totally responsible" for the intoxication could be held liable. Many who later wreak havoc on the highways probably drink at more than one establishment, perhaps drinking enough to get drunk at each. The statute would mean little if it only applied when the intoxicated person had the discretion to visit but one tavern.

In fact, the only logical interpretation of the term "causes the intoxication" is that offered by the plaintiff: a particular sale of alcohol must be a "material and substantial factor" in producing the intoxication. The "material and substantial factor" test does not, as the majority apparently thinks, undercut the legislative purpose of protecting those who furnish only minimal amounts of liquor to the intoxicated person. To the contrary, that definition of "causes" makes crystal clear that a *de minimis* amount could never *cause* the intoxication.

Perhaps the majority is correct that the instruction offered by the plaintiff could have been more aptly phrased, but the failure to tender a perfect instruction does not justify the trial judge in refusing to fully in-

struct the jury on appropriate subjects. And, in any event, I confess my total inability to comprehend the majority's criticism of that portion of the instruction containing the word "result" as well as the word "cause." A "cause" is defined as "a person or thing that acts, happens or exists in such a way that some specific thing happens as a *result*." (Emphasis added.) (Random House Dictionary of the English Language 214 (college ed. 1968); see also Black's Law Dictionary 200 (5th ed. 1979) ("Something that precedes and brings about an effect or result").) The court's fear that the use of the verb "result" in the instruction could mislead the jury to impose liability even when the amount of alcohol provided was so small as to not "cause" the intoxication is therefore simply insupportable as a matter of the English language.

A jury could certainly conclude that neither of two taverns furnishing negligible amounts of alcohol caused a particular intoxication. I do not think the evidence adduced here permitted such an inference, and I believe a properly instructed jury would not have found that neither tavern caused Berry's intoxication. Since the only evidence was that Berry drank in both taverns, and there was no evidence he drank anywhere else, logic compels the conclusion that one or both caused his intoxication.